## EWING v. BLACK.

### No. 10723.

United States Court of Appeals
Sixth Circuit.

Feb. 2, 1949.

---

Melvin Blumenthal, of Baltimore, Md. (H. G. Morison, of Washington D. C., Ward Hudgins and S. E. Wasson, both of Nashville, Tenn., on the brief; Edward H. Hickey, Vincent P. Russo, Leonard B. Zeisler and Robert Hannings, all of Washington, D. C., of counsel), for appellant.

Judson Harwood, of Nashville, Tenn. (Judson Harwood and Cecil Sims, both of Nashville, Tenn., on the brief), for appellee.

Before HICKS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The appellee, Robert W. Black, of Nashville, Tennessee, was employed from January 1, 1937, to February, 1943, by Gladstone Brothers of New York, manufacturers of clothing for men and boys. He was a commission salesman assigned to a definite territory.

In 1937, Black complied with the request of his employers that he procure a social security number, so that they might report the amount of commissions paid him and make payment of social security taxes due thereon to the Bureau of Internal Revenue. The employers made regular deductions at the lawful percentage rate from his wage commissions, but at no time reported officially any wages paid him or any amounts deducted from his wages for social security taxes, and made no remittances on his account to the Bureau of Internal Revenue, as required by law.

Appellee had no knowledge that the commissions paid him by Gladstone Brothers had not been reported to the social security

administration until, upon attaining age 65, he filed an application for benefits under the Social Security Act, 42 U.S.C.A. § 301 et seq. When informed by the Nashville field office manager of the Social Security Board, in April 1946, that the records of the board showed no postings whatever of any wages to his credit, Black wrote Gladstone Brothers, disclosing to them the information which he had received. The employers replied that they had always considered him an independent contractor on whom no taxes need be withheld; and that their purpose in making social security deductions on the wages paid him was that it would not then be necessary for them to make deductions at one time for all amounts due him, should it be decided that he was an employee. He was, of course, surprised, inasmuch as he had assumed that because regular deductions had been made from his wages for social security purposes his employers had made the required reports and paid the proper taxes on his behalf.

About two and a half months later, Gladstone Brothers mailed Black a check for $85.26, stating that this represented the monies which had been withheld for social security purposes; and that they had understood him to be classified as an independent agent "not subject to social security." The appellee had been paid commission wages of $50 or more in each of 25 calendar quarters to the total amount of $8,626.93, thus qualifying him for primary insurance benefits under section 202(a) of the Social Security Act, as a fully insured individual who has attained age 65 and has filed application for primary insurance benefits.

The application of appellee for these benefits was made on June 7, 1946, and was denied three and a half months later by the Bureau of Old-Age and Survivors Insurance of the Social Security Administration, Federal Security Agency. The determination by the bureau that the claimant was not a "fully insured individual" at the time of his application was based on the assertion that the amounts earned by him prior to January 1, 1942, could not be included in his wage record, in consequence of the provisions of section 205(c) (2) of the Social Security Act, which provides: "After the expiration of the fourth calendar year following any year in which wages were paid or are alleged to have been paid an individual, the records of the Board as to the wages of such individual for such year and the periods of payment shall be conclusive * * *." Section 405(c) (2), Title 42 U.S.C.A.

Appellee requested and obtained a hearing before a Referee of the Appeals Council of the Social Security Administration. He was the only witness who testified at that hearing, but documentary evidence was received. The finding was made by the Referee that an employer-employee relationship between Gladstone Brothers and Black had existed continuously from January 1, 1937, to the termination of his services in 1943, inasmuch as the proof showed conclusively that his employers not only had the right to control his services, but had exercised such control as a matter of fact.

The Referee sustained the ruling of the Bureau that the remuneration received by appellee from his employers constitutes wages; and found that the employers had made regular deductions from his commissions for social security purposes, but had at no time reported the amounts paid him, nor had they remitted any taxes affecting him to the Bureau of Internal Revenue. The official further found no evidence in the record which would indicate that the Social Security Administration had notice of Black's employment, or that he was being paid wages, "until just before April 1946." The Referee stated that, this being true, section 205(c) (2) of the Social Security Act, as amended, is applicable, with the resultant that the Social Security Administration has no lawful authority to credit the claimant with wages paid him by Gladstone Brothers prior to January 1, 1942, unless that firm, "in accordance with the provisions of section 205(c) (4), should report such wages and remit the taxes thereon to the Collector of Internal Revenue."

It was asserted by the Referee that in case such report and remittance were made, the Social Security Administration could revise its wage records to conform to the tax returns made to the Bureau of Internal Revenue, thereupon crediting claimant's wage account with the total wages paid him, and could also credit him with 25

quarters of coverage. Gladstone Brothers failed to take any such action in behalf of Black.

Conceding that Black "a man of intelligence and absolutely sincere in his intentions," had been misled by his employers to the deprival of his benefit status through no fault of his own, "as he had every reason to believe that his employers were making timely reports," the Referee, nevertheless, held that, though regrettable, Black has no remedy. The concluding paragraph of the Referee's decision states that the claimant can be credited only with wages paid subsequent to 1941 in the amount of $2,864.51, covering only six quarters; and that, inasmuch as the claimant is required to have had 15 quarters of coverage, Black was not a fully insured individual when he filed his application and, accordingly, is not entitled to the primary insurance benefits for which he applied.

The request of appellee to the Appeals Council of the Social Security Administration to review the Referee's decision was denied; and, in conformity with the practice of the Federal Security Administrator, the decision of the Appeals Council became his final decision. In due time and in compliance with the right granted him in section 205(g) of the Social Security Act, as amended, section 405(g), Title 42 U.S.C.A., appellee instituted this action in the United States District Court for the Middle District of Tennessee to review and reverse the administrative decision. He prayed that the Federal Security Administrator and the Commissioner for Social Security be required to cause payments, based on his earnings including the wages paid him by Gladstone Brothers, to be made him according to the provisions of the Social Security Act. Other and further relief as may be just and equitable was also prayed. Appellee filed a motion for summary judgment on the pleadings, on the admitted facts therein contained. The district court granted his motion.

The final judgment entered remanded the cause to the Federal Security Administrator with directions to him "to credit the plaintiff on his wage records with the amount of wages paid to him by Gladstone Brothers Company during the years 1937, 1938 and 1939 and to compute the amount of benefits to which he is entitled, upon the basis of such wage record and for further proceedings in conformity with section 205 (i) and the other applicable provisions of Title II of the Social Security Act, as amended."

The district court's decision was grounded upon the opinion, expressed orally, that the four-year period provided for in section 205(c) (2) of the Act is not retroactive and was intended to start with the year 1940; and that it could not be considered to be a four-year statute of limitations for any period of time prior to 1940.

Many finely drawn challenges to the correctness of the district court's decision have been presented by the government in its brief, as well as in its oral argument. In our analysis of the case, we find it unnecessary to pass upon all the propositions argued.

Whether or not the provisions of section 205(c) (2) of the Social Security Act, if applied generally, are constitutionally infirm need not be decided here. Moreover, we deem it unimportant here whether the pertinent section is, in general, a qualification of a right newly created by the Act of which the section is a part. Therefore, we have considered but will not discuss cases cited by the government to the point. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Pennsylvania Company for Insurances, etc. v. Deckert, 3 Cir., 123 F.2d 979, 985; Matheny v. Porter, 10 Cir., 158 F.2d 478; Damiano v. Pennsylvania R. Co., 3 Cir., 161 F.2d 534; Madden v. Lancaster County, 8 Cir., 65 F. 188. Not long ago, this court manifested its accord with the principle of these authorities in two opinions upon the subject matter, neither of which is cited by the government although certiorari was denied in both cases: Maki v. George R. Cooke Co., 124 F.2d 663, 146 A.L.R. 1352, with annotation, certiorari denied 316 U.S. 686, 62 S.Ct. 1274, 86 L.Ed. 1758; Wilson v. Massengill, 124 F.2d 666, certiorari denied, 316 U.S. 686, 62 S.Ct. 1274, 86 L.Ed. 1758.

Nor are we concerned with whether the section is reasonable, or unreasonable, as to the time limit within which the admin-

istrator's wage records for the period from 1937 through 1939 may be revised. We deem it unnecessary to discuss the argument of the government that "if section 205(c) (2) cannot be construed retroactively it forbids revision of the administrator's wage records for the years 1937-1939, inclusive, after February 29, 1944." We have not neglected, however, to read and consider the authorities cited: Sohn v. Waterson, 17 Wall. 596, 21 L.Ed. 737; Carscadden v. Territory of Alaska, 9 Cir., 105 F.2d 377, 379; Philadelphia Nat. Bank v. Raff, 6 Cir., 76 F.2d 843, certiorari denied 296 U.S. 601, 56 S.Ct. 118, 80 L.Ed. 426; The Fred Smartley, Jr., 4 Cir., 108 F.2d 603; American Mut. Liability Ins. Co., of Boston v. Lowe, 3 Cir., 85 F.2d 625.

■ Our concern is with the exact issue which we must decide. That issue does not involve a revision of the records of the Board. This is not a case of challenging the conclusiveness of records. There are no records to challenge. The Board has none at all pertaining to Black. The employer wrongfully failed to furnish them; but records affecting Black can now easily, accurately and completely be made by the Board from the exhibits introduced in evidence in this case. Section 205(c) (2) of the Act, reasonably construed, constitutes no bar to the Board's receiving these records and making them official, so that the employee may obtain his just benefits under the Social Security Act.

It will be observed that the provision of section 205(c) (1), section 405(c) (1), Title 42, U.S.C.A.; that the absence of an entry as to an individual's wages in the Board's records for any period shall be evidence that no wages were paid such individual in such period does not carry with it the conclusiveness of such records. The section merely says that the absence of entries shall be "evidence" that no wages were paid. It does not say that such absence shall be conclusive evidence. To the contrary, in section 205(c) (2), the records of the Board [which we think means records made, not omitted, by the Board], are expressly made "conclusive."

■ Appellant contends that, even though Black did not know that the ad-ministrator's wage records for the three years prior to 1940 failed to show that wages had been paid him by Gladstone Brothers, and notwithstanding the fact that he was led by his employers' actions to believe that the wages paid him had been reported to the Commissioner of Internal Revenue, he had the right, under section 205(c) (3), to request an opportunity to prove that the wages had been paid him during the crucial years and failed to exercise that right, bringing upon himself, thereby, the bar of section 205(c) (2). We cannot accede to this reasoning. There was no suspicious circumstance to put him upon notice that his employers had been derelict in performing their lawful duty in obedience to the Social Security Act. Why should he make inquiry when he was justified in feeling secure?

■ The beneficent purpose of Congress in the enactment of the Social Security Act must not be ignored. After painstaking investigation and elaborate research through experts, Congress reached the conclusion, upon which it acted, that the award of old-age benefits is conducive to the general welfare. See opinion of Mr. Justice Cardozo in Helvering v. Davis, 301 U.S. 619, 641-645, 57 S.Ct. 904, 909, 81 L.Ed. 1307, 109 A.L.R. 1319, where the legislative history of the Social Security Act is reviewed. In his logical reasoning, the eminent jurist did not strain eloquence when he said: "The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near."

■ In Social Security Board v. Nierotko, 327 U.S. 358, 364, 66 S.Ct. 637, 640, 90 L.Ed. 718, 162 A.L.R. 1445, affirming our decision in 149 F.2d 273, the Supreme Court, asserting that the "purpose of the Federal Old Age Benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor", gave a liberal interpretation to the Act; and held that "back pay" awarded under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to an employee is to be treated under the

336

Social Security Act as wages for which the employee is entitled to credit on his Old Age and Survivors Insurance Account. This holding was made despite a contrary administrative determination by the Social Security Board.

 Again, in United States v. Silk, 331 U.S. 704, 712, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757, the Supreme Court made it clear that the Social Security Act must be liberally construed: "As the federal social security legislation is an attack on recognized evils in our national economy, a constricted interpretation of the phrasing by the courts would not comport with its purpose. Such an interpretation would only make for a continuance, to a considerable degree, of the difficulties for which the remedy was devised and would invite adroit schemes by some employers and employees to avoid the immediate burdens at the expense of the benefits sought by the legislation. These considerations have heretofore guided our construction of the Act."

Attorneys for Black insist, and the district court agreed, that Congress did not intend that the limitation contained in section 205(c) (2) should apply to wage records for the years 1937-1939, inclusive. Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858, is cited to the proposition that a law is presumed, in the absence of clear expression to the contrary, to operate prospectively. Sections 204(a) and 204(b) of the Act, sections 404(a) and (b), Title 42, U.S.C.A. relating to correction of errors with respect to payments to an individual are pointed to as indicative that Congress did not intend that section 205(c) (2) should apply to wage records prior to the 1939 amendment.

We cannot accept such interpretation as sound. We think it apparent that the purpose of Congress was to give conclusiveness to the records for the years 1937 to 1939, inclusive, after the period of time and upon the conditions prescribed in the statute; but, where no records at all have been kept for those years relating to a particular employee, who had conformed to all lawful requirements which would qualify him to enjoy the benefits of the Social Security Act and with reason rested secure in the belief that his employers had likewise complied, the case is different. As we have attempted to show, it would defeat the obvious purposes of the Social Security Act and give judicial sanction to gross injustice to hold that, in the detailed circumstances of this case, the employee must be deprived of his social security old-age benefits.

Accordingly, we affirm the judgment; but we have attempted to make clear that we are not in accord with the reasoning upon which the district court based its decision.