**Ephram NESTOR, Plaintiff,**

v.

**Marion B. FOLSOM, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1154–58.**

United States District Court
District of Columbia.
Jan. 13, 1959.

David Rein, Joseph Forer, Washington, D. C., for plaintiff.

Oran H. Waterman, James C. Hise, James L. Weldon, Jr., Raymond A. Westcott, Dept. of Justice, Washington, D. C., for defendant.

TAMM, District Judge.

Facts

The plaintiff in this case immigrated to the United States in 1913 from Bulgaria. He was employed in the United States in employment covered by the Social Security Act from December of 1936 until January, 1955. In December of 1955, he filed an application for old age benefits, and he received an award of $55.60 per month effective as of November, 1955.

On July 7, 1956, the plaintiff was deported to Bulgaria pursuant to paragraph (1) of Section 241(a) of the Immigration and Nationality Act, 8 U.S. C.A. § 1251(a)(1). On August 31, 1956, the Attorney General of the United States notified the Bureau of Old Age and Survivors Insurance of the Department of Health, Education and Welfare of the fact that the plaintiff had been deported. The Bureau, pursuant to Section 202(n) of the Social Security Act (Title 42 U.S.C.A. § 402(n))[1], suspended

---

I. Title 42 U.S.C.A. § 402. *"Termination of benefits upon deportation of primary beneficiary.*

"(n) (1) If any individual is (after the date of enactment of this subsection) deported under paragraphs (1), (2), (4), (5), (6), (7), (10), (11), (12), (14), (15), (16), (17), or (18) of section 1251 (a) of Title 8 then, notwithstanding any other provisions of this subchapter—

"(A) no monthly benefit under this section of section 423 of this title shall be paid to such individual, on the basis of his wages and self-employment income, for any month occurring (i) after the month in which the Secretary is notified by the Attorney General that such individual has been so deported and (ii) before the month in which such individual is thereafter lawfully admitted to the United States for permanent residence.

"(B) if no benefit could be paid to such individual (or if no benefit could be paid to him if he were alive) for any month

by reason of subparagraph (A), no monthly benefit under this section shall be paid, on the basis of his wages and self-employment income, for such month to any other person who is not a citizen of the United States and is outside the United States for any part of such month, and

"(C) no lump-sum death payment shall be made on the basis of such individual's wages and self-employment income if he dies (i) in or after the month in which such notice is received, and (ii) before the month in which he is thereafter lawfully admitted to the United States for permanent residence.

"Section 403(b) and (c) of this title shall not apply with respect to any such individual for any month for which no monthly benefit may be paid to him by reason of this paragraph.

"(2) As soon as practicable after the deportation of any individual under any of the paragraphs of section 1251(a) of

payment of plaintiff's old age insurance benefits from and after September, 1956. However, it was through inadvertence that the Bureau did pay benefits to the plaintiff for the month of September, 1956.

The plaintiff's wife, Barbara B. Nestor, was given notice of the suspension of payment of old age insurance benefits in November of 1956. In February of 1957, the plaintiff appointed his wife and Irwin Gostin, an attorney, to represent him in his attempts to have the benefit payments reinstated and paid to him in Sofia, Bulgaria.

On January 31, 1958, a decision of a referee of the Department of Health, Education and Welfare was rendered subsequent to a hearing which was held on December 30, 1957, said decision holding that the Bureau properly suspended the payment of benefits to the plaintiff in this case. Following this, on May 5, 1958, plaintiff filed a complaint in this Court for statutory review.

The case is now before this Court on cross-motions for summary judgment, oral argument having been afforded both parties on November 24, 1958.

Contentions of Plaintiff

The sole issue in this case, according to the plaintiff, is the constitutionality of Section 202(n) of the Social Security Act. He contends that this section of the Act, as applied to him, is unconstitutional. In support of this conclusion, his argument sets forth the following contentions:

Title 8 enumerated in paragraph (1) of this subsection, the Attorney General shall notify the Secretary of such deportation."

2. Title 42 U.S.C.A. § 402—*"Conviction of subversive activities, etc.*

"(u) (1) If any individual is convicted of any offense (committed after August 1, 1956) under

"(A) chapter 37 (relating to espionage and censorship), chapter 105 (relating to sabotage), or chapter 115 (relating to treason, sedition, and subversive activities) of Title 18, or

### 1. Plaintiff is entitled as a matter of right to Social Security Benefits.

The plaintiff argues that "throughout the history of the Social Security Act, old age insurance benefits have been referred to as a right of the recipient which he has earned and paid for." He also places reliance upon the 1949 Report of House Ways and Means Committee, President Eisenhower's message of January 14, 1954 (100 Cong.Rec., 83rd Cong., 2nd Session, p. 257), remarks of Senator Millikin (100 Cong.Rec. p. 14382) and also upon the remarks of Senator George (102 Cong.Rec., p. 15110), all of which, in effect, state that Social Security benefits are not charity or "a hand-out", but rather are paid to the recipient as an earned right and are related in part to the individual's earnings.

### 2. Deprivation of Old Age Insurance Benefits is the imposition of a penalty.

The plaintiff reasons that benefit payments are derived from contributions of covered workers, their employers and self-employed persons. The payments that he claims under the Act were, in fact, earned through his work and are assured as a matter of statutory right. However, Congress has adopted an amendment to the Social Security Act which may deprive a person of old age insurance benefits upon conviction of certain crimes and may actually constitute a part of the sentence imposed upon such person. Title 42 U.S.C.A. § 402(u)[2].

"(B) section 783, 822 or 823 of Title 50,

"then the court may, in addition to all other penalties provided by law impose a penalty that in determining whether any monthly insurance benefit under this section or section 423 of this title is payable to such individual for the month in which he is convicted or for any month thereafter, and in determining the amount of any such benefit payable to such individual for any such month, there shall not be taken into account

"(C) any wages paid to such individual or to any other individual in the cal-

Therefore, the plaintiff argues that the withholding of his benefits constitutes a penalty.

In reference to this amendment, the plaintiff's conclusion that such deprivation is a penalty is also based upon letters from the Secretary of Health, Education and Welfare to the Senate Finance Committee on March 28, 1956 (Hearings before the Committee on Finance of U. S. Senate, 84th Cong., 2nd Session (pp. 1318–1319)) [3] and from the Director of the Bureau of the Budget to the Chairman of the Finance Committee (p. 1342).[4]

endar quarter in which such conviction occurs or in any prior calendar quarter, and

"(D) any net earnings from self-employment derived by such individual or by any other individual during a taxable year in which such conviction occurs or during any prior taxable year.

"(2) As soon as practicable after an additional penalty has, pursuant to paragraph (1) of this subsection, been imposed with respect to any individual, the Attorney General shall notify the Secretary of such imposition.

"(3) If any individual with respect to whom an additional penalty has been imposed pursuant to paragraph (1) of this subsection is granted a pardon of the offense by the President of the United States, such additional penalty shall not apply for any month beginning after the date on which such pardon is granted."

3. *Excerpts of letter from Secretary of Health, Education and Welfare to the Senate Finance Committee of March 28, 1956.* (Hearings before the Committee on Finance of the U. S. Senate, 84th Congress, Second Session, on Social Security Amendments for 1955; p. 1318–1319)

"An individual establishes rights to benefits under the old-age and survivors insurance program by working in employment or self-employment covered by the law and paying social security contributions on his earnings. The costs of benefits and administration are met in their entirety from the contributions of covered workers, their employers and self-employed persons. There is no contribution from general tax revenues.

\* \* \* \* \*

"\* \* \* if benefit rights of persons convicted of these crimes were terminated, a worker insured under old-age and survivors insurance would suffer a greater punishment than an individual whose work was in noncovered employment or who was not dependent on earnings from employment for his support. The punishment would be one that would last for the rest of the individual's life
\* \* \*

"As in the case of private pension and group insurance payments and as in the case of wages and salaries, benefits under old-age and survivors insurance are work-connected payments. It is this work connection—the fact that they are earned through work—that establishes the basic character of the benefits. Hence, under present law benefits are paid to an insured worker and his eligible dependents or survivors without taking into account his attitudes, opinions, behavior, or personal characteristics. The right to benefits having been earned, the individual's actions do not modify or restrict that right.

"Because the deprivation of benefits as provided in the amendment is in the nature of a penalty and based on considerations foreign to the objectives and provisions of the old-age and survivors insurance program, the amendment may well serve as a precedent for extension of similar provisions to other public programs, and to other crimes which, while perhaps different in degree, are difficult to distinguish in principle."

4. *Excerpts of letter from the Director of the Bureau of the Budget to the Chairman of the Finance Committee.* (Hearings before the Committee on Finance of the U. S. Senate, 84th Congress, 2nd Sess., on Social Security Amendments for 1955, p. 1342).

"It has always been stressed by the Congress that old age and survivors insurance is not a Federal bounty, but rather a separate self-financed system of insurance, the costs of which are shared equally by employer and employee; that benefits are assured as a matter of statutory right; that the Federal Government is merely a trustee of the system and not a contributor; and that certain benefits are available to surviving dependents of an insured individual without any rights of election or other voluntary action on the part of the insured wage earner. The proposed amendment does not seem consistent with these principles \* \* \*

"A further question involves the retroactive character of the amendment, since it would deny benefits based on contributions predating its enactment. This raises a legal and policy question as to

Plaintiff also contends that even if the benefits are a gratuity and not a right, he is still entitled to them and that a deprivation is an imposition of a penalty exercised in nonconformity to constitutional standards.

### 3. Deprivation of Old Age Benefits in this case violated the Constitution.

The basis for denying to the plaintiff his old age benefits was his deportation which, in turn, was based upon his past membership in the Communist Party. He concedes that deportation based on this activity has withstood constitutional challenge but alleges that the deportation was carried out "solely on the basis that a deportation is not penal in character and is accordingly not subject to the provisions of the ex post facto and bill of attainder clauses of the Constitution, and for the same reason need not conform with the constitutional requirements governing the imposition of a penalty." Consequently, he alleges that the same statute and procedure cannot serve as the basis for the imposition of a penalty. He further alleges that Congress recognized this in 1956 when, by the amendment to the Social Security Act, the imposing of such a penalty (i. e., deprivation of old age insurance benefits) was provided for upon conviction of certain crimes upon the principle that the deprivation was part of the judicial process and was imposed only after a judicial trial.

Plaintiff contends that Sec. 202(n) of the Social Security Act is invalid as an ex post facto law and as a bill of attainder. He further contends that the statute is against the due process clause of the Fifth Amendment to the Constitution because deprivation of the benefits has no relation to the aims of the Social Security Act and that since the Act, itself, does not require moral character as a condition to eligibility, there is no reason to discriminate against the group of which the plaintiff is a member.

Finally, the plaintiff states that the suspension of benefits was based upon his deportation and this, in turn, was based upon his participation in certain activities which he alleges were protected by the First Amendment. In other words, the real basis for his deportation and subsequent suspension of social security benefits was because of activities in which he could legally participate.

### Contentions of Defendant

In his opposition to the plaintiff's motion for summary judgment and in support of his cross motion for summary judgment, the defendant alleges that the plaintiff did not have a vested right to receive social security benefits; that suspension of benefits under 202(n) of the Social Security Act is not the imposition of criminal punishment; that the aforesaid section of the Act is constitutional as applied to the plaintiff; and that the findings of fact by the Secretary are supported by substantial evidence and are conclusive.

### Purpose of The Act

Counsel for the defendant has emphasized the importance of considering the purpose of the Social Security Act. Although counsel for the plaintiff puts little, if any, emphasis on this, it would be well to briefly inquire into the purpose of this legislation.

The Social Security Act of 1935 "provided a system of old-age insurance for persons working in industry and commerce as a long-run safeguard against the occurrence of old-age dependency." U.S.Code, Cong.Service, Vol. 2, 81st Cong., 2nd Sess., 1950, p. 3289. Subsequent revisions and amendments through 1946 dealt generally with provisions for broader coverage, supplementary benefits for dependents of the primary beneficiary and determining contribution rates.

Congress, under authority granted to it by the Federal Constitution (Article I, Sec. 8), saw fit to enact this legislation for the general welfare. Mr. Justice

---

the propriety of such retrospective action which should be resolved only after careful analysis extending to the whole

range of civil disabilities and penalties which may be imposed on individuals convicted of the particular crime."

Cardoza, in the case of Helvering v. Davis, 301 U.S. 619, 672, 57 S.Ct. 904, 909, 81 L.Ed. 1307, 109 A.L.R. 1319, 1324, wrote the following in discussing the Social Security Act:

> "But the ill is all one or at least not greatly different whether men are thrown out of work because there is no longer work to do or because the disabilities of age make them incapable of doing it. Rescue becomes necessary irrespective of the cause. The hope behind this statute is to save men and women from the rigors of the poorhouse as well as from the haunting fear that such a lot awaits them when journey's end is near."

See also: Ewing v. Black, 6 Cir., 172 F.2d 331, 335, 6 A.L.R.2d 948; Ray v. Social Security Board, D.C., 73 F.Supp. 58, 62.

Insofar as the purpose of the Act may be relevant, it arises in this manner, according to the Government:

> "A condition for the payment of benefits which takes into consideration whether or not the claimant is within or outside the United States is clearly reasonably related to the purpose of the program. The function which Title II of the Social Security Act was designed to serve was to minimize the great and rapidly growing cost of providing for needy aged persons in the United States * * * Certainly it would be pertinent to this purpose to consider, in establishing conditions prerequisite to eligibility for benefits, the physical presence or absence of a potential claimant within the United States. A fortiori, it is pertinent and reasonable to condition the payment of benefits so as to exclude payment to an individual who has been deported therefrom." (Points and Authorities of defendant's motion p. 6)

With reference to this contention of the defendant, note must be taken of the following from Vol. 100, Cong.Rec., 83rd Cong. 2nd Session, Jan. 25, 1954, p. 736, wherein Congresswoman Mrs. St. George quotes from a letter received by her from the Secretary of Health, Education and Welfare: "As you know, neither United States Citizenship or residence in the United States are requirements for receipt of old-age survivors insurance benefits.

"In 1939, a provision which would have prevented the payment of benefits to otherwise eligible persons who live abroad was considered by the Congress but was not included in the law."

The foregoing statement was relative to a short remark of Mrs. St. George dealing with people who work in the United States and become eligible for old-age pensions and then return to their country of origin. She commented that in some countries it was possible for a foreign national residing in one of these countries to collect old-age pensions from the United States as well as from his own country. She deemed it necessary that legislation to prevent "a rather obvious abuse of the intention of the law should be considered." Congress, in 1956, added subsection (t) to Sec. 402, Title 42, entitled, "Suspension of benefits of aliens who are outside the United States."

The plaintiff, however, contends that the purpose of the Act is immaterial as applied to him. He says that the right of a worker to social security benefits is an earned right and a deprivation of the benefits is a deprivation of property to which he is entitled, and to deprive him of such benefits is in the nature of an imposition of a penalty and as such must conform with constitutional requirements. In other words, when a person meets the requirements of the Act so as to be eligible for benefits, at that time he comes into possession of an accrued right, or a property right, and as such, these benefits may then be taken away only in conformance with constitutional requirements.

Nature of the Benefits and Power of Congress.

At this point it becomes necessary to determine as far as possible the nature of the benefits conferred under the Social

Security Act. Briefly, the fund from which such payments are made was created pursuant to Title 42 U.S.C.A. 401.[5] The fund itself is made up of taxes which are paid by employees and employers, these taxes being compulsory for the most part. As a practical matter, the monies which supply this fund rarely come under the control of the person from whose wages they are deducted.

In order to be eligible for reception of these benefits, the Act sets forth three conditions precedent. (See Sec. 402 (a))[6] Accordingly, once these conditions are fulfilled, the applicant then becomes entitled to benefits. The plaintiff in the present case fulfilled the statutory requirements in December of 1955 and he was awarded monthly benefits effective in November of 1955.

The defendant asserts that the right to benefits conferred pursuant to the statute is a creative right—that is, a statutory conditional right—which the Congress of the United States has the power to alter or terminate. In support of his position, the defendant cites the case of Ewing v. Risher, 10 Cir., 1949, 176 F.2d 641 and Norman v. Baltimore & O. R. Co., 294 U.S. 240, 308, 55 S.Ct. 407, 79 L. Ed. 885. The Ewing case involved a situation whereby a widow's claim for a lump-sum payment of death benefits was denied on the ground that the claim was not filed within two years of the date of her husband's death, and her claim for widow's insurance benefits was allowed for a shorter time than she claimed because of her failure to file a timely application therefor. The Court at page 644 of 176 F.2d, wrote:

" * * * The rule is well settled that where a statute creates a right, such as the one in this case, unknown to the common law and limits the time within which the right must be asserted, the limitation defines and controls the right and the right ceases to exist if not asserted within the time fixed in the statute therefor."

Although the above-cited case lends support to the contention of the defendant as to the nature of the benefits conferred, it is readily distinguishable in certain aspects from the present 'case. The cited case dealt exclusively with the fulfillment of certain conditions precedent as prescribed by statute, whereas in the present case these conditions precedent were fulfilled, and it is the termination of benefits that is being contested.

In the case of Ewing v. Gardner, 6 Cir., 185 F.2d 781, the appellee, executor of the estate of the decedent brought an action for primary insurance benefits under the Social Security Act. The claim

---

5. Title 42 U.S.C.A. § 401—"*Federal old-age and survivors insurance trust fund and Federal disability insurance trust fund.*

"(a) There is created on the books of the Treasury of the United States a trust fund to be known as the 'Federal Old-Age and Survivors Insurance Trust Fund.' The Federal Old-Age and Survivors Insurance Trust Fund shall consist of the securities held by the Secretary of the Treasury for the Old-Age Reserve Account and the amount standing to the credit of the Old-Age Reserve Account on the books of the Treasury on January 1, 1940, which securities and amount the Secretary of the Treasury is authorized and directed to transfer to the Federal Old-Age and Survivors Insurance Trust Fund, and, in addition, such amounts as may be appropriated to, or deposited in, the Federal Old-Age and Survivors Insurance Trust Fund as hereinafter provided * * *"

6. Title 42 U.S.C.A. § 402. "*Old-age and survivors insurance benefit payments—*"Old age insurance benefits.

"(a) Every individual who

"(1) is a fully insured individual (as defined in section 414(a) of this title),

"(2) has attained retirement age (as defined in section 416(a) of this title), and

"(3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained the age of 65,

"shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August 1950 in which such individual becomes so entitled to such insurance benefits and

had been disallowed because the wage earner had failed to furnish the required proof of age at the time he filed his application for benefits. The Social Security Administration awarded the appellee a lump sum death payment but ruled that the appellee as executor was not entitled to receive primary insurance benefits under the Act. The District Court [88 F.Supp. 315] held that the appellee was entitled to recover from the appellant the primary insurance benefits. An appeal followed, and at page 783 of 185 F.2d, the Court stated:

" * * * when the application was filed the three conditions or facts necessary under the statute to entitle the wage earner to receive the monthly primary insurance benefit actually existed. His right to the monthly primary insurance benefit accrued at that time. * * * In the absence of an express provision in the statute to the contrary, the furnishing of such proof is a condition precedent to payment, but not to liability."

And at page 784 of 185 F.2d:

" * * * The right of the wage-earner to the primary benefit is not a gratuity, but is a property right which can be enforced by court action. Dismuke v. United States, 297 U.S. 167, 170, 56 S.Ct. 400, 80 L.Ed. 561; Lynch v. United States, 292 U.S. 571, 576–577, 54 S.Ct. 840, 78 L.Ed. 1434."

The holdings of the courts on this point have not, however, been uniform. For example, in the case of Roston v. Folsom, D.C., 158 F.Supp. 112, 120, the Court stated:

"It is beyond reason to refer to Social Security benefits as property rights to which one might succeed."

In the same case, there is the following at page 121:

"Social Security is in the nature of insurance. The terms 'insured,'

'insurance', and 'beneficiary' are used throughout the act. The retirement benefits are similar to an annuity; the survivor benefits resemble insurance."

In the case of Broderick, Inc. v. Squire, 9 Cir., 163 F.2d 980, the main question presented was whether an employer-employee relationship existed between the appellant and real estate brokers. The Court at page 981 said:

"The Social Security Act, 42 U.S.C.A. § 301 et seq. was enacted in 1935 to solve the problem of insecurity brought on by old age and unemployment. The method is to provide for payments in the nature of annuities to the elderly and compensation to the unemployed. United States v. Silk, and Harrison v. Greyvan Lines, [331 U.S. 704] 67 S.Ct. 1463, 91 L.Ed. [1757]. Revenue is obtained from the collection of employment taxes."

In connection with a review of the authorities relating to the nature of the benefits conferred by the Social Security Act, one must also consider the power of Congress to alter, repeal or amend the Act. The position of the defendant may be stated simply as this: Congress created this right to benefits—it was a right unknown to the common law, that is, it is a creative or statutory right, and as such Congress may make changes in the Social Security Act and in the rights thereunder from time to time as it sees fit.

In support of this position, the defendant relies upon the fact that Congress from the time of the enactment of the original Act expressly reserved to itself "the right to alter, amend, or repeal any provision of this Act * * *." Title 42 U.S.C.A. § 1304. The defendant also cites the case of Mullowney v. Folsom, D.C., 156 F.Supp. 34. In that case, the claimant became entitled to benefits as of April, 1950. At this time, and up until

---

ending with the month preceding the month in which he dies. Except as provided in subsection (q) of this section, such individual's old-age insurance bene-

fit for any month shall be equal to his primary insurance amount (as defined in section 415(a) of this title) for such month."

January 1, 1951, "earnings from self-employment did not affect either benefits payable under the Act or deductions therefrom." At page 35. Then, on January 1, 1951, an amendment to the Act became effective which amendment "deprived him of Social Security payments by reason of his earnings as a self-employed real estate broker in excess, first of $50 a month, and later $75 a month." At page 35.

The question then presented was whether the plaintiff had a vested right to receive Social Security benefits as of April, 1950 which could not be adversely affected by legislation passed subsequent to that date.

The Court, in granting the motion of the defendant for summary judgment, wrote the following:

"Social Security payments are made out of the general treasury and are financed by collections made from both employers and employees * * *

"Payments made as a result of Congressional appropriation have not been thus far construed as contractual in their nature * * *

" * * * The statute provides (Title 42 U.S.C.A. § 1304) as follows:

" 'The right to alter, amend, or repeal any provision of this chapter is reserved to the Congress.'

" * * * It results from all the foregoing considerations that in the opinion of this Court, Edward Mullowney did not acquire a vested right in the Social Security payments alloted to him according to the terms of the Certificate to which reference has been made (and as they might be increased), which rendered them immune from the further exercise of Congressional control, pursuant to the terms of the Statute above quoted."

It appears well at this point to consider the question, namely: To what extent are the rights of public employees who are within the coverage of a statutory pension system vested, so as to render invalid, legislation repealing or modifying the provisions of the pension statute. Although Social Security benefits do not equate, per se, to pension plan payments, in determining the nature of Social Security benefits it has been shown that they are similar to annuities. Annuities, pensions and Social Security benefits are similar in certain characteristics. The recipient under each plan receives payment of benefits usually at the time of his retirement. Also, the sources from which payments are made are composed essentially in the same manner—that is, by contributions, be they voluntary or involuntary. Thus, in determining to what extent the rights of beneficiaries under any system are vested, a study of these rights under a statutory system (pensions) now seems appropriate. The question is discussed at great length in 52 A.L.R.2d 440, with a state by state analysis. The following appears at page 443:

"§ 3. Federal Decisions (in cases involving federal state and territorial pension statutes)

"The decisions of the federal courts, both in cases involving state statutes providing for pensions for public employees, and in cases involving similar federal and territorial enactments, support the general rule that a pension granted by a public authority is not a contractual obligation, but is a gratuitous allowance, in the continuance of which the pensioner has no vested right; accordingly, the pension is terminable or alterable at the will of the grantor.

" * * * The federal courts have held that the rule that a pensioner has no vested right in the pension is applicable to pension systems under which participating employees are required to contribute, on either a voluntary or compulsory basis." (Citing cases in footnotes 4 and 5).

"But an exception to the rule that a pensioner has no vested right in a pension has been drawn in the case

of particular pension payments which have become due; the federal courts hold that the pensioner has a vested right in such payments." (Citing cases in footnote 6)

Thus far, it is seen that previous decisions of courts have approved the power of legislatures to revise upward or downward payments under pension plans, retirement acts, etc. The most important feature behind this fact is that these revisions were held to be lawful and thus not inconsistent with any provision of the Constitution. Or as stated in Constitution of the United States of America by Corwin (p. 857):

"Rights created by statutes are subject to qualification by Congress; benefits conferred gratuitously may be redistributed or withdrawn at any time (United States ex rel. Burnett v. Teller, 107 U.S. 64, 68 [2 S.Ct. 39, 27 L.Ed. 352] (1883)"

However, the plaintiff contends that even if the benefits conferred under the statute are deemed to be a gratuity and not an earned right, the deprivation of them still must conform to constitutional requirements. In support of this contention, he relies upon the case of Steinberg v. United States, Ct.Cl., 163 F.Supp. 590. In that case, the plaintiff retired on February, 1951 and began to receive an annuity under the Civil Service Retirement Act (5 U.S.C.A. § 691). Subsequently, in September of 1954, he was subpoenaed before a Federal Grand Jury in New York, at which time he invoked the protection of the Fifth Amendment of the Constitution of the United States. The plaintiff was later advised by the defendant that his annuity was temporarily suspended and later this became permanent, such action being pursuant to Title 5 U.S.C.A. § 704d.[7] The plaintiff then filed an action claiming that § 740d did violence to his rights as a citizen of the United States under the Constitution. The Court by a decision of three to one granted the motion of the plaintiff for summary judgment.

Judge Laramore held that the:

" * * * right of a Federal employee to an annuity is not born of a contractual relationship * * * but is more in the nature of a gratuity granted in appreciation for long and faithful service. Congress may in its wisdom modify the payments upward or downward without impairing the obligation of a contract. * * * Although an annuity is paid for past as distinguished from present services, the legal relationship between the parties is in all material respect parallel since a current Federal employee neither has a vested or contractual right to continued employment. Even so the Supreme Court has said 'that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory,' Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 219, 97 L.Ed. 216. Thus we are squarely met with the question as to whether or not it is arbitrary and discriminatory for the Federal government to exclude persons from its annuity rolls who have availed themselves of the protection provided for in the Fifth Amendment."

He held that upon the basis of Supreme Court decisions "such a law is an indiscriminate classification of the inno-

---

7. Title 5 U.S.C.A. § 740d now § 2283.
   "There shall not be paid to any person who has failed or refused, or fails or refuses, prior to, on, or after the date of enactment of this Act, upon the ground of self-incrimination to appear, testify, or produce any book, paper, record, or other document, with respect to his service as an officer or employee of the Government or with respect to any relationship which he has had or has with a foreign government, in any proceeding before a Federal grand jury, court of the United States, or congressional committee, or to the survivor or beneficiary of such person, for any period subsequent to the date of such failure or refusal of such person or the date of enactment of this Act, whichever is later, any annuity or retired pay on the basis of the service of such person as an officer or employee of the Government."

cent with the guilty and must fall as an assertion of arbitrary power." 163 F. Supp. at page 592.

Continuing, Judge Laramore wrote:

"Furthermore, an act of Congress applying to persons such as plaintiff which inflicts punishment without a judicial trial is a bill of attainder prohibited by the Constitution. United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252; Cummings v. State of Missouri, 4 Wall. 277, 18 L.Ed. 356; Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366. In this case the punishment inflicted by the act was the denial of his annuity without due process. A bill of attainder is a legislative act which inflicts punishment without a judicial trial. If the punishment be less than death, the act is termed a bill of pains and penalties which within the meaning of the Constitution is a bill of attainder. Cummings v. State of Missouri, supra. Notwithstanding that plaintiff had no vested or contractual right to his annuity, we believe that Congress in prescribing a punishment for persons who exercise a constitutional right has acted beyond the scope of the Constitution."

Judge Whitaker concurred in the result reached by the majority but viewed the case in a somewhat different light. He held, notwithstanding the case of Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 and cases subsequent to that case, that, "A Federal employee who has retired from the service has a vested right in the retired pay to which he was entitled at the time of his retirement."

Also,

"When an employee enters the Government service he does so relying upon the statute or regulations fixing the current compensation of the office and the amount to which he will be entitled upon retirement. So long as he remains in the Government service, Congress of course has the right to change the compensation to be paid to the holder of the office as well as the retired pay to which he will be entitled upon retirement. The employee takes the office with knowledge, actual or constructive, of the power of Congress to do this. But, after the employee has rendered the services required of him by the Government, and severs his connection with the Government he then becomes entitled to the retired pay in effect at the time of his retirement.

"This, I think, is a vested right, because it is compensation for services already rendered. Retired pay is * * * a part of the emoluments of the office."

Judge Whitaker then proceeded to strengthen his view first by an interpretation of Title 4, section 401, of the Act of July 31, 1956, carried in Title 5 U.S. C.A. § 2254(b)[3], and second, by reference to a number of cases which hold that a person has such a vested right to retirement benefits. 52 A.L.R.2d 437. He admits that "the decisions of the Federal courts are in the other direction." 163 F.Supp. at page 595. In his comment on the case of Dodge v. Board of Education, supra, he writes:

"I concede full power in the legislature to reduce retired benefits to people on the payroll when the Act was passed, but I deny the power of the legislature to reduce retirement benefits to people who have severed their connection with the Government; in other words, to people who

---

**3.** Title 5 U.S.C.A. § 2254(b). *"Consent to deductions.*

"Each employee or Member shall be deemed to consent and agree to such deductions from basic salary, and payment less such deductions shall be a full and complete discharge and acquittance of all claims and demands whatsoever for all regular services during the period covered by such payment, except the right to the benefits to which he shall be entitled under this chapter, notwithstanding any law, rule, or regulation affecting the individual's salary."

have already earned the retired pay in effect at the time of their retirement." 163 F.Supp. at page 595.

In another case with which he deals in his opinion, MacLeod v. Fernandez, 1 Cir., 101 F.2d 20, certiorari denied Toste v. MacLeod, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471, which "expressly held that the retired pay of a retired employee could be reduced by a law passed after the date of his retirement," (163 F.Supp. at page 596), Judge Whitaker states:

"I do not agree with the decision in that case. If I am correct in saying that the retired pay is not a pension or a gratuity, but is compensation for services already rendered, then I think an employee's right to this retired pay does become vested at the time of his retirement.

"If this view is correct, Congress has taken this vested right without due process of law. I do not think this can be gainsaid and, hence, I do not enlarge upon it." 163 F.Supp. at page 596.

Chief Judge Jones, while concurring, touches upon an aspect of the case which the other judges did not treat. He states that the United States Government has many obligations calling for the payment of money; the courts determine what obligations exist and their extent thereof, but the power to pay or authorize their payment rests solely in Congress. He writes:

"If Congress, therefore, chooses to withhold appropriations to pay the Government's obligations, or any of them, it is not within the province of the courts to pass upon the wisdom of that decision, nor is it within their power to compel Congress to do otherwise." 163 F.Supp. at page 593.

He held in regard to retirement benefits that there is a definite contractual relationship which certainly becomes effective upon retirement but that with regard to pensions or gratuities, there is neither a contractual relationship nor a

vested right and that Congress may reduce the amount from time to time.

In discussing the Act of Congress in the above-cited case, Chief Judge Jones wrote:

"* * * But, if by the act in the present case, Congress has merely withheld payment by restriction on appropriation or by a refusal to appropriate, the obligation of the United States to the plaintiff stands unimpaired, though unpaid. If this is all the act accomplishes, there is nothing to prevent the present or a future Congress from recognizing the obligation to plaintiff by appropriation and payment and neither is there anything to prevent this court from entering judgment in favor of the plaintiff for the amount of the obligation without determining constitutional questions." 163 F.Supp. at page 593.

In conclusion, he wrote:

"* * * If the act be construed as an intention on the part of Congress to destroy a right which became vested at the time of retirement it would be invalid. But on the other hand if, as seems likely, the intention of the Congress was merely to decline to make an appropriation so long as the condition existed, such action was clearly within the scope of its authority."

As seen in the Steinberg case, supra, different approaches were taken by the different judges in forming a basis for their decisions. However, there was near unanimity on one point, that being that the statute was an arbitrary and unreasonable discrimination between employees who have availed themselves of a constitutional guarantee and those who have not used this guaranteed protection. Judge Madden in his dissent did not agree with this conclusion however.

■ Is the statute (Title 42 U.S.C.A. § 402(n)) in the present case arbitrarily and unreasonably discriminating. The basis for discrimination is that any one

who has been deported under certain paragraphs of Sec. 1251(a) of Title 8 U.S.C.A. is deprived of his benefits as opposed to those who have not been deported and thus not deprived of their benefits.

 From the foregoing, it would be only reasonable to accept the fact that Congress has the right or power to make such amendments and repeals as are necessary from time to time. This is especially true when one realizes that the Act itself deals with what had been, and may even still be, the economic needs of a continually increasing portion of the population. Since the Act deals to a substantial extent with the economy of our nation, a casual glance at the economic history of the country reveals that many fluctuations, some minor, some extreme, have occurred, and it is only reasonable to assume that they will occur in the future.

However, to say that Congress has the right through its legislative enactments to cope with certain problems that may continually arise and that are relative to the purpose for which the Act was passed is one thing, but it is an entirely different thing to say that Congress while legislating and purportedly in accordance with the basic designs and purposes for which the Act was originally passed, can or may deprive a person of a property right is quite another matter. For, as Judge Whitaker points out in the case of Steinberg v. United States, supra, 163 F.Supp. at page 596;

"* * * If I am correct in saying that the retired pay is not a pension or a gratuity, but is compensation for services already rendered, then I think an employee's right to this retired pay does become vested at the time of his retirement.

"If this view is correct, Congress has taken this vested right without due process of law. I do not think this can be gainsaid and, hence, I do not enlarge upon it."

It has been seen from the foregoing authorities that Congress may validly revise or alter payments to beneficiaries of pension systems. Their power to reduce payments or to impose conditions to their payment has also been upheld. However, must it logically follow that because Congress has the power to exercise such revision or alteration that it may also completely deprive one of such benefits after they have fully accrued? This Court does not believe so.

As seen previously, the basic conflict is between the power of Congress to legislate in this field and the right of a person to an accrued property right. Prior decisions reveal, although not unanimously, that the nature of such benefits make them property rights, but property cannot be taken from a person without due process of law, that is, 'law of the land.'

This Court concludes that the plaintiff was not afforded due process of law in being deprived of his benefits through a legislative enactment which took such benefits because of deportation. The Court grants the plaintiff's motion for summary judgment.

Counsel will submit a proper order.