**Albert E. DOMANSKI, Plaintiff-Appellee,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant-Appellant.**

**No. 15005.**

United States Court of Appeals
Sixth Circuit.

Nov. 4, 1963.

O'Sullivan, Circuit Judge, dissented.

Pauline B. Heller, Atty., Dept. of Justice, Washington, D. C. (Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellants.

Richard Goodman, Detroit, Mich. (Goodman, Crockett, Eden, Robb & Philo, by Geo. W. Crockett, Jr., Detroit, Mich., on the brief; Maurice Sugar, Detroit, Mich., of counsel), for appellee.

Before WEICK and O'SULLIVAN, Circuit Judges, and BOYD, District Judge.

WEICK, Circuit Judge.

This appeal is from an order of the District Court setting aside a decision of the Secretary of Health, Education and Welfare denying old age insurance benefits, under the Social Security Act, to appellee Domanski and directing the Secretary to allow and pay his claim.

The Secretary had denied the claim on the ground that no genuine employer-employee relationship existed between Domanski and his son-in-law, who was his alleged employer.

Upon denial of his claim, Domanski filed an action in the District Court to review the decision of the Secretary. Motions for summary judgment were filed by both parties. The District Court adopted findings of fact and conclusions of law and granted Domanski's motion for summary judgment. The District Court ruled as a matter of law, on the facts found by the Secretary, that Domanski was an employee of his son-in-law during the period involved and ordered that he be paid social security benefits. The Secretary filed this appeal.

The basic facts were not in dispute.

Domanski, a native of Germany, came to the United States in 1949 with his wife, his daughter, and his son-in-law, William M. Gougeon. Gougeon met and married Domanski's daughter while Gougeon was on duty in Germany as an American soldier. Domanski had, for a while, been a shoemaker in Germany, but

for most of his adult life was a postal employee there. He was in his late fifties when he came here in 1949, and became 65 years old on April 14, 1957.

Gougeon and his wife provided a home for and supported the senior Domanskis after their arrival here. In 1950, the Gougeons and the Domanskis moved to Onaway in Michigan's upper peninsula. Gougeon acquired some land on the shores of Black Lake and originally planned to construct and operate a resort camp there. The commercial plan was not carried out. Through the years 1950 to 1954, the land owned by Gougeon was, by the efforts of Gougeon, Domanski and some contracted help, cleared and a house and cabin built thereon. Until the cabin was built, the Domanskis shared the house with the Gougeons. Thereafter, they lived in the cabin. Domanski performed needed chores in and about the Gougeon premises. In his statement to the agency, he stated that he "helped with clearing and filling the land, construction, painting, shingling, building fences, etc." There was evidence of other work done by Domanski—cutting logs for and aiding in the construction and maintenance of a breakwater, wheeling with a wheelbarrow many truck loads of sand for a road, and like work.

Gougeon, the son-in-law and alleged employer, was himself employed as a representative of an insurance company. He worked along with his father-in-law in the general maintenance of his property. In 1956, the increase in his insurance work prevented his giving as much time to his property as he had, up to that time, been accustomed to give. More work then fell to the father-in-law, Domanski. Domanski and Gougeon both testified that at this time in 1956, Domanski felt that he should have some money in addition to his keep and it was agreed that thereafter he should be paid $5.00 per week. Until July 1, 1959, he received these cash payments. At that time, the involved application for old age benefits was made. The payments were then stopped, as it was assumed that he

would begin receiving the applied for benefits. By July 1, 1959, Domanski had been receiving the payments for twelve quarters, the minimum number required to make him eligible for such social security benefits.

At no time prior to the application for social security benefits were any deductions for social security tax taken from the money paid to Domanski. Likewise, neither Domanski nor Gougeon applied for a social security account number. Domanski and wife were both claimed as dependents by Gougeon for income tax purposes.

Domanski, during the period from 1955 through 1959, had a small income of less than $400 from other sources such as shoe repairing and odd jobs. The alleged payments for wages made by Gougeon to Domanski during the twelve quarter period amounted only to $780.00.

Domanski's duties after July 1959 when the $5.00 payment for weekly wages ceased were no different than they were during the twelve quarter coverage period. Gougeon continued after July 1, 1959 to furnish food, free rent and utilities to Domanski and his wife as he had during the coverage period and prior thereto since 1949. Domanski took care of his spending money from his small income for shoe repairing and odd jobs.

At the hearing Domanski testified in part as follows:

"Q. In 1956 did you start to get money?

"A. I told Mr. Gougeon I have no money.

"Q. You said you wanted a little money?

"A. Yes.

"Q. And what did he say, okay? He said okay? Your son-in-law say 'All right I give you money?'

"A. Yeah, he said he would give me few dollars.

"Q. How much did he start giving you?

"A. Five dollars a week at no regular day.

"Q. For the same work?

"A. Yes.

"Q. Exactly five dollars, you got five dollars exactly?

"A. Yes. * * *" (Tr. pp. 43–44)

"Q. Who brought up the question of you getting the $5 a week, or extra money, you or your son-in-law?

"A. I tell him I need little bit money. I do too much work. I tell him, I need a little bit money. I needed a little money for shaving and what not. * * *" (Tr. p. 46)

The District Judge in his findings of fact quoted in part from the findings of the Secretary as follows:

"By 1955 the claimant's son-in-law found that his insurance work had increased and had become more competitive, and he was thus required to put more time in his usual calling. Accordingly, he was unable to perform as many services about the house as he did previously and the claimant assumed more duties. At his [plaintiff's] request, he was paid $5.00 each Saturday for these services. There were no deductions for Social Security or income tax in connection with these payments."

" * * * The weekly payments were discontinued in July 1959 when it was thought that claimant was eligible for Social Security benefits; but the son-in-law continued to support the claimant and his wife. If the claimant did not perform the chores about the home, it would have been necessary to hire another for this purpose. The son-in-law also considered the claimant as his employee."

In addition to the findings quoted by the District Judge, the Hearing Examiner also found:

"In late 1955 the claimant (Domanski) asked his son-in-law for some payments in addition to the room and board, to have some *spending money,* and the son-in-law agreed to pay him $5.00 per week. This situation continued from 1956 into 1959 when the payments were stopped on the theory that the claimant was then eligible for social security benefits." (Italics ours.)

The District Judge in his findings of fact also quoted the following from the findings of the Hearing Examiner:

"From the facts in this case it does not appear that a genuine employer-employee relationship existed between the claimant and his son-in-law. * * * There is nothing in the record to establish that an employment relationship was contemplated between the parties; that the claimant expected to receive compensation for his efforts; that the son-in-law expected to pay wages in this connection."

We should first point out that in an action to review the decision of the Secretary the case is not tried de novo in the District Court. The review is limited to the record of the proceedings before the Secretary. In reviewing this record the Court is not authorized to adopt findings of fact of his own, but must accept the Secretary's findings of fact if they are supported by substantial evidence. When so supported, they are conclusive. 42 U.S.C. § 405; Hobby v. Hodges, 215 F.2d 754 (C.A.10). The finality of the Secretary's findings extends also to inferences drawn by him from the evidence. Walker v. Altmeyer, 137 F.2d 531 (C.A.2); Sherrick v. Ribicoff, 300 F.2d 494 (C.A.7).

Whether Domanski was an "employee" receiving "wages" for the requisite period was not, in our judgment, a question of law, but of fact to be determined from all the evidence in the case. Irvin v. Hobby, D.C., 131 F.Supp. 851, 863.

The Hearing Examiner found from the evidence that "no genuine employer-employee relationship existed between claimant and his son-in-law." We

think there was ample basis in the record to support this finding of fact. This may be gleaned from the family relationship between the parties; from the fact that Domanski and his wife were members of the household of the son-in-law receiving free board and lodging from 1949 to 1956; from the nature of the service rendered; from the fact that the payments were not wages but an allowance in cash for spending money; from the fact that the payments were made only during the twelve quarter qualifying period and ceased upon its expiration although presumably Domanski continued to render his alleged services for nothing; from the fact that the son-in-law took his father-in-law and mother-in-law as dependents in his income tax returns; from the fact that no social security return was made and the alleged wages were not reported until after Domanski made his claim for benefits.

The District Court could reach the conclusion which he did only by giving no effect to the inferences drawn by the Secretary from the evidence, but as we have shown, the Court is bound by such inferences. The District Court was also bound by the finding of the ultimate fact that no genuine employer-employee relationship existed as this was, in our opinion, supported by substantial evidence.

This case is similar to Folsom v. O'Neal, 250 F.2d 946 (C.A.10) which reversed the judgment of the District Court overturning the decision of the Secretary involving an alleged employment of a brother by his sister. In that case the brother was paid $300 a month for duties performed at the sister's hotel. See also: Stevenson v. Ribicoff, 297 F. 2d 811 (C.A.2).

The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the complaint.

O'SULLIVAN, Circuit Judge (dissenting).

I must respectfully disagree with the holding of the majority opinion. In the course of the administrative processing of Domanski's claim, the matter was referred to a trial examiner. From the testimony and documentary evidence, such examiner made findings of fact. While there appears to me to be some inconsistencies in such findings of fact, the trial examiner's ultimate finding impresses me, as it did the District Judge, as presenting a factual situation from which an employer-employee relationship follows *as a matter of law*. The critical finding is:

"By 1955, the claimant's son-in-law found that his insurance work had increased and had become more competitive, and he was thus required to put more time in his usual calling. Accordingly, he was unable to perform as many services about the house as he did previously *and the claimant assumed more duties. At his request*, he was paid $5.00 each Saturday for these services. * * * If the claimant did not perform the chores about the home, *it would have been necessary to hire another for this purpose. The son-in-law also considered the claimant as his employee.*" (Emphasis added.)

I do not consider that the Secretary and his trial examiner are any more at liberty to disregard their own findings of fact than we are. They cannot disregard the legal consequences that flow from such facts.[1]

The statute providing the benefits involved here, defines an employee as "any individual who, under the usual *common law* rules applicable in determining the employer-employee relationship, has the status of an employee." (Emphasis added.) Title 42 U.S.C.A. § 410(k)(2).

1. "Neither the terms of the Social Security Act * * * nor the implications of policy * * * give the Board judicially unreviewable authority to exclude from wages what *as a matter of law* are wages." Justice Frankfurter, concurring in Social Security Board v. Nierotko, 327 U.S. 358, 371, 66 S.Ct. 637, 644, 90 L.Ed. 718.

The statutory definition is somewhat expanded by the regulations of the Social Security Administration.[2]

The trial examiner's decision does not question that here the alleged employer, Gougeon, had the right of control and direction of his alleged employee, his father-in-law, both as to method and result. The trial examiner found that, for the additional burden of work cast upon him by his son-in-law's increased attention to his insurance business, Domanski requested money compensation in addition to his keep. His request was granted and the son-in-law agreed to pay the requested amount "for these services."

These facts being undisputed, I believe that the final inference or conclusion to be placed on them as to the employer status was one of law. While on the review in the District Court, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." (Title 42, U.S. C.A. § 405(g)), the legal consequences that arise from such facts are properly matters of law for the court. Carroll v. Social Security Board, 128 F.2d 876, 881 (C.A.7, 1942); Miller v. Burger, 161 F. 2d 992, 993 (C.A.9, 1947).

In my opinion, the District Judge's order did not intrude upon the fact finding prerogative of the Secretary. The brief of the Secretary in this Court proceeds upon the assumption that we deal with undisputed facts. He avers, "The basic facts are not in dispute * * * the secretary's action is predicated on *the very facts submitted by or on behalf of petitioner.*"

The testimonial record made in the administrative proceeding would have permitted *a finding of fact* foreclosing Domanski's claim. Even though the oral and written statements of Domanski and Gougeon were not met by direct contrary proof, and there was no direct testimonial contest of the claimed Saturday $5.00 payments, a fact finder might, indeed, have been dubious and on the whole record found the facts against Domanski's version. Such is the prerogative of a fact finder. Andrew Jergens Co. v. Conner, 125 F.2d 686, 689 (C.A.6, 1942). While the fact that neither the employer nor the employee made any current payments or returns of social security tax would not, by itself, forbid a finding that the needed employer-employee relationship did exist, Ewing v. Black, 172 F.2d 331, 6 A.L.R.2d 948 (C.A.6, 1949); Rhoads v. Folsom, 252 F.2d 377, 379 (C.A.7, 1958), such fact, with other circumstances, could have been weighed by the fact finder in considering whether the entire claim of employment and payment of wages was a fabrication. The trial examiner, however, accepted as truth the claim that pay for extra services to be performed was requested by Domanski and that Gougeon agreed to, and did, pay *for such services* in an amount and for the period necessary to qualify Domanski. The statute which permitted Domanski's entrance into the District Court forbade that court from setting aside any such finding of fact, if supported by substantial evidence. 42 U.S.C.A. § 405(g).

In arriving at the decision made, the trial examiner and the Secretary had to determine Domanski's eligibility for benefits upon the basis of its own findings of fact. From the basic facts which he did find and which in his address to this Court he states "are not in dispute" the Secretary drew what I consider an erroneous conclusion of law. I agree

2. 20 C.F.R. § 404.1004(c)
    "(1) Every individual is an employee if under the *usual common-law rules* the relationship between him and the person for whom he performs services is the legal relationship of employer and employee. (Emphasis added.)

    "(2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished."

with the District Judge, who, accepting the Secretary's finding of fact, stated:

"In the opinion of the Court, this oral agreement for wages, followed by periodic payment of the agreed wage for the increased and more arduous work performed by plaintiff, constituted *in law* a contract of employment and established an employer-employee relationship within the meaning of the Act."

The application of our Social Security laws may, indeed, in specific cases, appear to be overly generous to some of its beneficiaries. However, if correction is needed, it should come by Congressional action.

I would affirm the judgment.