**Oakie MURPHY, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**No. 1022.**

United States District Court
E. D. Kentucky,
at Pikeville.

Oct. 2, 1967.

Marrs Allen May, Pikeville, Ky., for plaintiff.

George I. Cline, U. S. Atty., J. T. Frankenberger, Asst. U. S. Atty., for defendant.

## MEMORANDUM

HIRAM CHURCH FORD, Senior District Judge (serving by designation).

The plaintiff (claimant) Oakie Murphy, of Phyllis, Pike County, Ky., filed his application on February 10, 1964, with the Social Security Administration seeking that he be determined entitled to a period of disability and to disability insurance benefits under the Social Security Act. On his application, claimant alleged that he became unable to work February 28, 1963, because of "back condition". (Tr. 87–90).

His application was denied initially (Tr. 93) and on reconsideration (Tr. 98) by the Divisions of Disability Operations of the Social Security Administration.

Upon request of claimant, a hearing was held at Pikeville, Ky., on February 17, 1965, before Hearing Examiner Herman Platt. (Tr. 23–83). Claimant, his wife Christine Murphy, and his sister Buna Hunt were present and testified. Vocational Consultant Ronald G. Hampton was also present and testified. Thereafter, on April 30, 1965, the Hearing Examiner filed his decision (Tr. 5–19) holding that the claimant was not entitled to a period of disability or to disability insurance benefits under the Social Security Act, as amended. The claimant filed a request for review, which was granted by the Appeals Council. On May 28, 1965, the Appeals Council filed its decision (Tr. 2) affirming the decision of the Hearing Examiner. The decision of the Appeals Council thus became the final decision of the defendant, Secretary of Health, Education and Welfare.

On July 12, 1965, plaintiff filed this civil action pursuant to § 205(g) of the Social Security Act, 42 U.S.C.A. § 405 (g), for Court review and reversal of the defendant's final decision.

A certified copy of the transcript of record, including the evidence upon which the findings and decision complained of are based, has been duly filed. It shows that the claimant met the special earnings requirements during the effective period of the application and continues to meet such requirements through September 30, 1968. (Tr. 6, 99).

In his decision, the Hearing Examiner summarized the claimant's background as follows:

"Claimant is a 36-year-old caucasian male, six feet two inches tall, weighing 190 pounds. He is married and lives with his wife and four children; he said he was not sure about their respective ages. Claimant is virtually

illiterate, since he is able to write only his name, and cannot read. He had had no special training nor any rehabilitation indoctrination, and has never been in the military service. He grew up on a 200-acre farm, where he did plowing, fed and milked the cows and helped raise corn and vegetables. He has not worked with any farm machinery. At about age 16, having gone through the third grade in elementary school, he obtained his first job with a gas company, digging ditches for pipe lines; he used an air hammer in connection with his work. At age 18 he went to work for the Eastern Coal Company as a coal-loader. He then obtained a job with the Kentland-Elkhorn Coal Company, where he worked for 17 years until he was hurt in a slate fall. His experience in the mines was varied; he used an electric drill, did 'shooting' (blasting), operated a mechanical Joy Loader, laid track, did timbering, spliced defective cables, helped put up the ventillating screens and bolted the roof. He said he had spent a total of 19 years in the mines, mostly in 'high' coal (5 feet). The claimant was working on the Joy Loader when he was injured in a slate fall on February 28, 1963; he testified that he was struck on the head, knocked backwards, and then rocks fell across him. He was taken to the Pikeville Miners Memorial Hospital, where he remained for a month. He said that all he received there was 'dope'; that he was not put in a cast, and was in bed all of the time, except when he had to go to the bathroom (on crutches). After his discharge he was required to return every two weeks. When the undersigned referred him to Exhibit 15, wherein was incorporated a statement that his fractures were well-healed, the claimant disagreed and said that his back was not well, although he conceded that his pubic bone did not hurt him. He testified he had made two attempts to go back to work and had put in a total of six shifts, but could not tolerate the effort entailed in walking.

"Mr. Murphy testified that he lived in a four-room frame house with an outdoor water supply, and that his wife and children carried in the water. He said he thought he could do it, but simply didn't. The house, according to him, is heated with coal; this is brought in by the children. He stated he was able to take care of his own personal needs, did a slight amount of walking, performed no household chores, and just 'messed around' and 'laid around' on the couch most of the time; that he belonged to no social organizations, no church, and spent half his time watching television. He said he had no special mattress to sleep on nor any special chair, and that he would sit on a couch where he could rest his back while watching TV. He said he was currently living on credit, and that he received no welfare assistance except commodities; that there was a small vegetable garden used for subsistence, although he did no work in it. When the undersigned pointed out to him that he seemed to have a very good recollection for past events, and that it was odd he could not recall the ages of his children, he replied that he just didn't keep up with them. He said he had no outdoor hobbies, that he had once had a driver's license, but was caught 'drunk driving' in 1956, and that it was thereupon revoked. He stated, however, that he had not done any drinking for four years, but smoked some. He alleged that the chief obstacles to returning to work were his back and legs; that they hurt all the time, and that if he did any substantial walking during the day he was unable to sleep nights. He said the pain in his back and legs was very sharp at times, and traveled to the end of his toes. He said, however, that he was not taking any medication; that he had been told to exercise, and that he had, indeed, tried this, but had given up three or four months before, since it achieved nothing. He said he

had begged the company to obtain surgery for him for his back, but that he had been rejected; that he could not afford to go to a doctor regularly at the present time, and that the hospital had given him medicine for his pain, although he could not tell that it helped any. He allegedly feels worse since he quit work, and expressed the opinion that he could not do any light bench work because he was in such pain. He also said he had made no attempt to find work as he did not know of anything which he could do. The undersigned suggested work in a service station, but the claimant rejected this since, he said, he would not be able to stand on his feet." (Tr. 6–7).

After reviewing the facts of claimant's background and other evidence in the case, the Hearing Examiner gave the following evaluation of the medical evidence:

"It it apparent that there are gross discrepancies in the findings and conclusions reached by the various physicians who have examined the claimant, most particularly with regard to the position taken by Drs. Hess and Sutherland on the one hand, and by the various doctors at the Miners Memorial Hospitals on the other. Resolution of such discrepancies is within the province of the Hearing Examiner [Stobaugh v. Flemming, CCH, UIR, Fed.Para. 8769, (D.C.E.D.Ark., 11/23/59); Stoliaroff v. Ribicoff, 198 F.Supp. 587 (N.D.N.Y. 10/24/61); Talley v. Flemming, 195 F.Supp. 264 (D. of Nevada, 12/6/60)].

"This Examiner was struck, not merely by the disagreement with respect to diagnoses, but also with the radical difference in interpretation of the various x-rays of the claimant's pelvis and back. Indeed, not only has there been disagreement among the physicians, but discrepant findings have been advanced by the physician who testified in connection with the claimant's hearing before the Workmen's Compensation Board. It is noted that this physician first testifeid that:

'X-ray examination shows *an old healed fracture* of the right pubic bone * * *', then that 'the x-rays of the pelvis show a fracture of the ischial and right acetabular junction with *incomplete healing*' and finally that it would take 'probably approximately *around 12 months for those fractures to heal completely*'. (Emphasis ours). Although he specified 12 months from the time of the injury, it is noted that at the time of the hearing, 16 months had already elapsed since the accident itself.

"The observations, findings and conclusions made by the various physicians at the Miners Memorial Hospitals where claimant has been examined are extremely persuasive, because the reports entered by these institutions are consistent and have been made by individuals whose experience with coal miners would be very difficult to match. It is noted that pursuant to Exhibit 26, on November 1, 1963, the fracture of the right pubic bone was described as 'old united fractures' and that this fracture was described as 'well-healed' on March 13, 1964 (Exhibit 15), again on May 13, 1964 (Exhibit 17). The undersigned, therefore, cannot ascribe too much weight to the finding by the claimant's compensation physician that the fracture was not healed, or that it is incompletely healed.

"Claimant's tendency to 'exploit and dramatize his symptoms with grunts, groans, in drawing of breath, et cetera', as noted in Exhibit 27, is considered in connection with the evaluation of findings made in the performance of the straight leg raising test. Because of this tendency to exaggerate and dramatize, the undersigned considers the findings of 'negative' on straight leg raising as set forth in Exhibit 17 and 26, as correct. Claimant's allegation of pain on this test bilaterally, at approximately 45 degrees (Exhibit 27), is certainly inconsistent with objective findings made both before and after this examination, and with a finding in the same exhibit that a gross neuro-

194

logical examination of the lower extremities was 'negative'. It is also noted (Exhibit 27) that *he did not describe a sciatic type of pain,* that he walked without a limp, that he was able on forward flexion to bring his fingertips within six inches of the floor with his knees extended, and that on November 1, 1963 (Exhibit 26), the almost continuous pain in his low back did not radiate to either of his lower extremities and that on this occasion, too, the straight leg raising test was 'negative' bilaterally. The claimant's allegations of pain radiating into the legs are therefore not accepted.

"While the claimant's physician in the Workmen's Compensation case (Exhibit 18) did make a finding of 40 to 45 percent disability of the body as a whole, such conclusions by physicians are not binding upon the undersigned; [Halland (Helland) v. Flemming, 193 F.Supp. 290 (U.S.Dist. Court, Oregon); Jacobson v. Flemming, 186 F.Supp. 936 (Dist. Court, S.D.N.Y.); United States v. Spaulding (293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617)]; nor, indeed, even if another Agency accepts such a finding, is the Hearing Examiner constrained to agree with it [Carpenter v. Flemming, 178 F.Supp. 791 (N.D. W.Va. 12/1/59); Sampson v. Flemming, 189 F.Supp. 725 (D. of Kansas, 10/24/60); Stoliaroff v. Ribicoff, 198 F.Supp. 587 (N.D.N.Y. 10/24/61); Thompson v. Flemming, 188 F.Supp. 123 (D. of Oregon, 10/11/60); Huff v. Celebrezze, CCH, UIR, Fed. para. 14, (E.D.Ky. 1/28/63)].

"There is, of course, no question that the claimant suffered severe injuries in his accident of February 28, 1963. The objective medical evidence adequately demonstrates that there is an old fracture of the right pubis, but that this is well-healed; that there are no gross abnormalities resulting therefrom; that the claimant has a history of an old peptic ulcer; that he suffers from lumbosacral strain; that he has marked pulmonary emphysema, chronic bronchitis, and is inclined to worrying and anxiety. It is not shown, however, that the foregoing impairments, either individually or in combination, are sufficient to constitute a disability so severe as to prevent the claimant from engaging in substantial gainful activity." (Tr. 15–18).

The Hearing Examiner gave his Findings and Conclusions as follows:

"1. That the critical period in this case runs from February 28, 1963, the alleged onset of impairment, to May 10, 1964, the effective period of the application.

"2. That during the aforesaid critical period, claimant was a 34 to 36 year old caucasian male, six feet two inches tall, and weighing 190 pounds. He was married and had four children at home. He had a third-grade education, was nearly illiterate, had received no special training nor any rehabilitation, was raised as a farm boy, and has been primarily a coal miner for most of his working life.

"3. That during the aforesaid critical period the claimant suffered from the following impairments: a history of an old peptic ulcer, now healed; old fracture of the right pubis, healed, with no gross abnormalities in evidence; a good range of motion of the lower back accompanied, however, by allegations of pain; marked pulmonary emphysema; chronic bronchitis; and severe lumbosacral strain.

"4. That none of the foregoing impairments, nor any combination thereof was sufficient to constitute a disability of such severity as to prevent the claimant from engaging in substantial gainful activity.

"5. That during the aforesaid critical period the claimant was capable of performing, inter alia, the following jobs: 'ASSEMBLER'; 'DRILLER' or 'DRILL PRESS

OPERATOR'; 'SNAG GRIND-ER' (SWING GRINDER); 'PACKER II'; 'CONVEYOR II'; and 'BOTTLE INSPECTOR I'; that such jobs are similar to, or follow reasonably from, those performed by him in the past, and represent a reasonable transfer of his previously acquired skills; that they require no more education than the claimant has; that they exist in reasonable numbers in the American economy and are found within a radius of 75 to 150 miles from claimant's residence; that such radius represents a reasonable distance from his residence; that such jobs require an energy output ranging from 'light and/or sedentary' to 'moderate'.

"6. That the claimant will continue to meet the special earnings requirements for disability purposes at least through September 30, 1968.

"The burden of proving a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration rests upon the claimant (Jacobson v. Flemming, 186 F. Supp. 936, U.S.D.C., Nev., 1960; Stedman v. Ribicoff, U.S.D.C., Minn.; Civil action No. 4–60, decided May 29, 1961; Stoliaroff v. Ribicoff, 198 F. Supp. 587, U.S.D.C., N.D.N.Y., 1961). Claimant has failed to sustain the burden of proof which rested upon him.

"In the light of the entire evidence of record and of the foregoing considerations, the Hearing Examiner finds that the claimant has not established that he has impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of February 10, 1964, was effective.

"It is the decision of the Hearing Examiner that the claimant is not entitled to disability insurance benefits or to a period of disability under sections 223 (a) and 216(i) of the Social Security Act, as amended." (Tr. 18–19).

On May 3, 1965, claimant filed his request for review of the Hearing Examiner's decision, and the Appeals Council granted his request.

On May 28, 1965, the Appeals Council rendered its decision which, in part, is as follows:

"The hearing examiner's statements in his decision as to the pertinent provisions of the Social Security Act, the issues in the case, and the evidentiary facts which were before him, are incorporated herein by reference. No new or additional evidence has been presented to the Appeals Council for consideration in connection with the request for review.

"After a careful review of the case, including all the evidence, the applicable law and regulations, the hearing examiner's evaluation of the facts, and the reasoning in his decision, the Appeals Council adopts the inferences, findings, and conclusions of the hearing examiner.

"It is the decision of the Appeals Council that the claimant is not entitled to a period of disability or to disability insurance benefits under sections 126 (i) [216(i)] and 223, respectively, of the Social Security Act, as amended, for which he filed application on February 10, 1964. The decision of the hearing examiner is affirmed." (Tr. 2).

Thus, the decision of the Appeals Council became the final decision of the defendant, Secretary of Health, Education and Welfare.

Under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), it is provided that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

■ The Secretary, and not the Court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony and to determine the case accordingly. Domanski v. Celebrezze, 323 F.2d 882, 8 A.L.R.3d 687, C.A. 6.

■ After considering the record as a whole, I am of the opinion that this Court

is bound by the findings of the Hearing Examiner, as affirmed by the decision of the Appeals Council, and that both decisions are sustained by substantial evidence.

For the reasons indicated, the above mentioned final decision of the Appeals Council of May 28, 1965, adopting and affirming the decision of the Hearing Examiner of April 30, 1965, should be affirmed. An order will be entered in conformity herewith and directing that this action be dismissed.