**Troy HALL, Plaintiff,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**No. 1024.**

United States District Court
E. D. Kentucky,
Pikeville.

Oct. 6, 1967.

Ronald W. May, Pikeville, Ky., for plaintiff.

George I. Cline, U. S. Atty., J. T. Frankenberger, Asst. U. S. Atty., for defendant.

## MEMORANDUM

HIRAM CHURCH FORD, Senior District Judge.

The plaintiff, Troy Hall, of Weeksbury, Floyd County, Ky., filed his application on September 28, 1964, with the Social Security Administration seeking that he be determined entitled to a period of disability and to disability insurance benefits under the Social Security Act, claiming that he became unable to work on March 5, 1964, because of "back and legs". (Tr. 60–63).

His application was denied initially January 15, 1965, (Tr. 66) and on reconsideration on March 5, 1965, (Tr. 71) by the Division of Disability Operations of the Social Security Administration.

Upon request of claimant, a hearing was held at Pikeville, Ky., before Hearing Examiner Ned O. Heinish. (Tr. 24–57). The claimant, Troy Hall, his attorney, Mr. Ronald W. May, and Vocational Consultant, Dr. Karl F. Heiser, were present and participated in the hearing. Thereafter, on May 17, 1965, the Hearing Examiner filed his decision (Tr. 6–16) holding that the claimant was not entitled to a period of disability or to disability insurance benefits under the Social Security Act, as amended. The claimant filed his request for review, which was granted by the Appeals Council. On June 23, 1965, the Appeals Council filed its decision (Tr. 2–3) affirming the decision of the Hearing Examiner, which decision of the Appeals Council became the final decision of the defendant, Secretary of Health, Education and Welfare.

On July 17, 1965, plaintiff filed this civil action pursuant to § 205(g) of the Social Security Act, 42 U.S.C.A., § 405 (g), for Court review and reversal of the defendant's final decision.

A certified copy of the transcript of record, including the evidence upon which the findings and decision complained of are based, has been duly filed. It shows that the claimant met the special earnings requirements during the effective period of the application and will continue to meet such requirements through June 30, 1968. (Tr. 7, 67).

In his decision, the Hearing Examiner summarized the claimant's background as follows:

"The claimant, Troy Hall, resides at Weeksbury, Floyd County, Kentucky. He was born in Pike County, Kentucky, on May 29, 1929. * * * He and his wife, Josephine, have three children, whose ages range from past ten years to just under five years. Claimant attended public school for a very short time and his only educational accomplishment is that he is able to print his own name. Otherwise, he is illiterate. He has never had any further formal education or training of any sort. * * * Claimant owns his own home which consists of some 30 acres of hillside land. The family has a small garden but claimant has been unable to work in it since his injury. He used to drive an automobile but has not done so since his injury.

"Claimant's work experience consists generally of coal-mining and machine-tending. The former was acquired in and around his native Kentucky area. The latter was acquired largely in Michigan. As a coal miner claimant was primarily a shuttle buggy operator although he occasionally helped drill coal or load it by hand. Claimant's machine-tending mostly consisted of feeding gypsum board into a machine that applied decorative paper to it; feeding mortar into a roofing machine; filling cans in a soap factory; and bundling small steel scrap. Claimant also has worked as a ditch digger with an oil well outfit. His work outside the coal mines involved roughly five years at the various jobs. He also described why he left each of these jobs.

"Claimant's injury occurred on March 5, 1964, while he was operating a shuttle buggy. He described the incident, stating he drove the buggy (which weighed about a ton) onto the dumping ramp and it failed to dump properly. He attempted to lift the buggy to dump it and felt a sharp pain in his back. They were about through work for the day and claimant finished the shift. He tried to work next day but could not finish out the shift. He went to Dr. Grigsby for medical assistance and was given something with which to bathe his back. When his symptoms grew worse he was sent to the miners' hospital at Williamson, West Virginia, where he was kept for about ten days (see Exhibit No. 12). He has been treated by Dr. Grigsby to some extent since (see Exhibits Nos. 16, 18, and 21) and was re-examined in February 1965 by Dr. Meyers at Williamson (see Exhibit No. 22). Dr. Meyers told claimant that he had a ruptured disc and that he should have it operated. This claimant steadfastly refuses to do, although he still has his United Mine Workers welfare card which entitles him to free medical treatment. He insists he knows of others who have experienced similar difficulty; been op-

erated; and are now in bad shape. Claimant complains of back pain about his belt line (where he first felt the pain) and of pain, particularly in his left leg although he has some in the right leg. He also experiences left leg numbness. Bad weather or exertion seems to aggravate his condition. Claimant also says he has trouble with his stomach, which he has been told is an ulcer, and he follows an ulcer diet. He had some difficulty in this regard for quite a number of years prior to his injury. He thinks it is worse now—'it hurts all the time'. He believes he has lost weight since his injury from 145 to 132 (both figures approximate).

"Claimant does no work around home. Such tasks as gardening; carrying water, coal, ashes, etc., around the house are done by others. The family has no income except for $50.00 per month in food stamps. Claimant used to hunt but has not done anything since his injury except listen to the dogs from his yard. He sometimes while around home wears the back brace Dr. Grigsby prescribed for him. It keeps him from bending but otherwise does not seem to help." (Tr. 8–9).

The Hearing Examiner's summary of the Medical Evidence is as follows:

"The documentary medical evidence in this case consists of seven reports by six physicians and/or hospitals. Their contents are hereinafter briefly summarized.

"Exhibit No. 12 consists of copies of Discharge Summary and Ambulatory-Patient Clinic Notes from Memorial Medical Center, Williamson, West Virginia, showing claimant's admission on March 25, 1964 and discharge on April 4, 1964, with outpatient notes through April 14, 1964. This gives a succinct history of claimant's difficulties resultant from his back pain which allegedly was caused by an episode while at work. The results of the hospital evaluation are stated as follows:

" 'HOSPITAL COURSE: Routine CBC and urinalysis were obtained and found to be within normal limits. The fasting blood sugar was 102. VDRL was non-re- active. A lumbar myelogram was performed on 3–27–64. The Hypaque flowed to D–12 interspace without obstruction and the myelogram was interpreted as being completely within normal limits. No defects were noted. Following this procedure the patient was given a Physical Medicine evaluation and he was subsequently started on heat and pelvic traction. It was felt that if the patient had not shown any improvement by April 10th on physical means alone, then a surgical intervention would be in order. Despite physical therapy the patient continued to complain of pain in the right hip and leg and to the posterior aspect of the knee. Straight-leg-raising still caused discomfort into the right testis but more at 80 to 90 degrees than 60 degrees on admission. There continued to be paravertebral spasm present. Because of this it was felt that an extruded disc at L–4, L–5, and/or L–5, S–1 on the right was present despite the negative findings on the myelogram. It was felt that the patient could be discharged to go home for a week and to return on April 14th to the Neurosurgical APD. If at that time he is not symptom-free he will be readmitted and surgery performed. The patient was discharged on Darvon and a sacro-iliac belt to return on April 14th, 1964.

" 'DISCHARGE DIAGNOSIS:
Probable herniated nucleus pulposus, L–4, L–5 and/or L–5, S–1.'

The April 14th followup notes conclude with Dr. Meyers' impression:

" 'I believe the patient has a herniated disc which will eventually flower to a picture demanding operation. For the present he is getting along just about acceptably comfortable. He has not yet attempted to go back to work. I predict that when he does, his symptoms will recur to a disabling degree.'

"Exhibit No. 15 is a copy of letter dated May 25, 1964, on stationery of Memorial Medical Center, addressed to Thurman L. Hibbits, Attorney at Law, signed by Dr. Russell Meyers, Chief, Departments of Neurology and Neurosurgery, con-

cerning hospitalization and treatment of claimant through April 14, 1964, wherein Dr. Meyers reviews the history of claimant's treatment and his impression as above-quoted from Exhibit No. 12.

"Exhibit No. 16 consists of copies of Ambulatory-Patient Clinic notes dated March 17, 1964 through October 1, 1964, wherein Dr. C. G. Grigsby repeatedly recommends surgical evaluation.

"Exhibit No. 18 is a medical report signed by Dr. Charles G. Grigsby of McDowell, Kentucky, undated but stamped received by the Pikeville, Kentucky District Office on October 12, 1964. It states a diagnosis of 'Possible Ruptured I. V. Disc.'

"Exhibit No. 19 is a letter addressed to Division of Disability Determinations dated December 5, 1964, signed by Dr. Ralph J. Angelucci of Lexington, Kentucky, covering examination of claimant on November 12, 1964. Dr. Angelucci states the results of his evaluation as follows:

" 'EXAMINATION: Reveals a thin 35 year old white male in no apparent pain or distress. He is clear, alert and cooperative, with a normal gait and station. Detailed examination of the head and cranial nerves is entirely normal. The neck reveals no abnormalities. The upper extremities and the shoulders are equal in size, shape and strength. The back contour is good. There is no spasm, masses, asymmetry. On touching the patient's back, he groans and moans and jumps exaggeratedly. But, I can not find anything of note on forward flexion. He limits this about 25%, some of which appears to be voluntary. The lower extremities are equal in size, shape and strength. Motor function is normal throughout. There are no abnormalities noted in sensory or reflex examinations. X-rays of the lumbosacral spine are non contributory. There are no disc signs noted on this patient at this time and no abnormality as far as his back examination is present now. Whether he has had a disc problem in the past, as of my examination of November 12, 1964, this man's back seemed to be entirely normal and adequate.'

"Exhibit No. 21 is another medical report signed by Dr. Grigsby, this one dated January 29, 1964, which states a diagnosis of 'peptic (Duodenal) ulcer Lumbo-Sacral Muscular Strain'".

"Exhibit No. 22 is a copy of letter dated February 9, 1965, on stationery of The Highlands Clinic, Williamson, West Virginia, signed by Dr. Russell Meyers, addressed to Ronald W. May, Attorney at Law, covering examination of claimant on February 6, 1965. Dr. Meyers states his findings and concludes:

" 'My impression is that this patient has a herniated intervertebral disc at L–5–S–1, producing radiculitis of the S–1 nerve root on the left side. I advised surgical intervention, as I did on April 14, 1964. The patient appears reluctant to accept the proposal for surgery. He fears he may 'wind up paralyzed'. He states he has heard of such cases.

" 'It is my opinion that without surgery this man will be permanently unable to return to his usual work.'

"Dr. Meyers also states his opinion 'it is very clear that he (claimant) does not attempt to exploit symptoms for 'occult' gains." (Tr. 11–13).

The Hearing Examiner's summary of the testimony given by the Vocational witness is as follows:

"At the conclusion of claimant's testimony, Karl F. Heiser, Ph.D. of Glendale, Ohio, was sworn. He is a consulting psychologist and has so functioned for some 35 years. Exhibit No. 23 is a copy of a résumé of his professional background, education, and experience. Counsel stipulated that Dr. Heiser was qualified to testify as a vocational consultant, and the Hearing Examiner stated for the record that Dr. Heiser's specific testimony concerning claimant would be taken as an expert witness in the field of vocational guidance.

"Dr. Heiser testified that he had been present throughout the hearing and that he had previously examined the docu-

mentary evidence. He asked that claimant explain the nature of his duties as a shuttle buggy operator primarily to ascertain whether or not such lifting as precipitated claimant's injury was a usual part of the job. The claimant testified that it was, and the Hearing Examiner accepted the answer in view of his knowledge of conditions in the Eastern Kentucky coal fields. Dr. Heiser then stated under those circumstances he could not recommend any type of work in the mines for claimant.

"Dr. Heiser explained the assumptions concerning the facts upon which he predicated his evaluation of claimant's residual work capacity. First, limitations as to education preclude consideration of work which requires reading or writing or even use of average judgment or comprehension. Second, heavy lifting or vigorous back movements should be avoided in work. However, claimant apparently possesses average use of his hands, arms, and shoulders and sufficient visual acuity to undertake simple light jobs using his hands. Claimant has considerable work experience in a variety of jobs in Kentucky and elsewhere, principally Michigan. Thus, Dr. Heiser testified that he felt claimant could perform simple, manual sedentary light jobs, which would involve lifting no more than ten pounds. Dr. Heiser then listed by industry and Dictionary of Occupation Titles code numbers examples of such jobs and briefly described the existence of such jobs in the general geographic area. They are as follows:

" 'Cooperage industry: hoop-punch-and-coiler operator; croze-machine operator, grade I; tongue-and-groove-machine operator. Woodworking industry: sanding or polishing. Cord and twine industry: bundle-remover and breaker; twine winder. Printing and publishing industry: punch-press-operator helper; slicer, hand; jogger. Electrical products industry: element winder; contact-plate assembler; box closer; sample mounter. Many industries: painter, helper, spray. Small electrical parts industry: tableman; base remover. Textile industry: cardboard stringer; turner, hand; salvaging-machine operator; cloth-shrinking tester.'

"In reply to counsel's questions on cross-examination, Dr. Heiser testified that in reaching his conclusions he had assumed a fairly severe degree of backstrain based upon claimant's testimony concerning his feelings and pain. Dr. Heiser specifically testified that assuming claimant does suffer from 'a herniated intervertebral disc at L–5, S–1 interspace, producing radiculitis of the S–1 nerve root on the left side', he would not alter his testimony. Only if a diagnosis included constant excruciating pain which could not be alleviated by medical treatment would Dr. Heiser recommend that claimant should not be employed at the sort of jobs listed. Mr. May on cross-examination also referred to the brief discussion of the actual existence of such jobs in the general area, and Dr. Heiser cited one concrete example of an opening he had discovered in the baked goods industry at Logan, West Virginia, within ten days prior to the hearing. Counsel then speculated with Dr. Heiser concerning why psychologists seem to dominate the field of vocational counseling and guidance, and Dr. Heiser stated he believed it probably results from the fact that psychologists largely developed the vocational skill and aptitude tests.

"Counsel also asks Dr. Heiser certain questions concerning what relationship, if any, exists between limitations of education and the fear of undergoing surgery. They agreed that there seemed to be some such correlation between fear of, and refusal to submit to, surgery and an individual's intellect and education." (Tr. 9–11).

After reviewing the facts of claimant's background and the evidence in the case, the Hearing Examiner gave the following evaluation of the evidence:

"In considering all of the evidence of record, the Hearing Examiner felt that several things were quite well established. The medical evidence indicates that the claimant does have a back problem, ap-

parently resultant from his described injury episode lifting the shuttle buggy, which quite obviously prevents him from engaging in strenuous manual labor, especially with regard to using his back in lifting or vigorous movement. This would perforce prevent claimant in his present condition from returning to coal mining. Equally certain is the medical opinion that claimant should have remedial surgery to correct, or at least attempt to alleviate, his back condition as to the herniated intervertebral disc. Claimant was most explicit in his refusal to accept such surgical intervention. Without regard to any esoteric discussion of the nature of such back surgery, this situation at once raises the concept expressed in the Regulations Section 404.-1502(g) [1] concerning remediability of physical conditions. The Hearing Examiner is fully aware of the areas of divergence of opinion concerning seriousness of consequences, and possibilities and probabilities of success involved. However, here it is not felt that the case completely turns upon this concept. Such must be, and has been, considered most carefully but it is not felt to be controlling.

"This last conclusion was reached after much careful consideration of every phase of the evidence of record, including observational impressions obtained at the hearing with proper and requisite inferences to be drawn therefrom. As above stated, the Hearing Examiner feels that the record, particularly the medical reports, establishes that claimant does have some back trouble which is of a degree of severity as to logically preclude him from engaging in heavy manual labor such as coal mining. However, the Hearing Examiner is not convinced that the medical reports establish that claimant by virtue of his back condition suffers from such a degree of impairment as to preclude him from engaging in light, simple, sedentary employment such

as described by the vocational witness and heretofore discussed herein. The matter of claimant's stomach trouble has been considered along with his back problem. It seems clear that claimant, long preceding his injury, had such stomach difficulty which was controlled by diet and that it did not then and should not now be reasonably said to preclude employment per se. These two conditions—stomach and back—are the only ones alleged. Thus, the Hearing Examiner finds that claimant's degree of severity of impairment coincides with Dr. Heiser's assumptions, and the vocational recommendations as to possible light employment are acceptable and they should be and are herein adopted.

"It must be noted that there is a most marked divergence of medical opinion in this record as to the severity, or even existence of, objective symptomatology re claimant's back. It is Dr. Meyers' view (see Exhibits Nos. 12, 15, and 22) that claimant is permanently unable to work without surgery to correct the intervertebral disc herniation. Dr. Meyers is convinced that claimant is not a malingerer. Dr. Angelucci on the other hand finds no present back abnormality and strongly implies that claimant voluntarily exaggerates his symptoms. Both of these physicians are full time specialists in neurology. This Hearing Examiner, who is a lawyer—not a doctor—is not qualified to dispute with these gentlemen as to medical conclusions. However, the question of motivation is not entirely a medical one. With due humility, the Hearing Examiner in order to at least reach an evaluation must intrude into this divergence even if he cannot resolve it authoritatively. The Hearing Examiner concluded from observation that the claimant exhibited a noticeable degree of firmness of opinion which might be characterized as approaching stubbornness. He has fixed opinions concerning back surgery, for instance. His testimony con-

---

1. (g) An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity. 20 C.F.R. 404.-1502(g).

cerning his work experience and reasons for leaving different jobs also seemed to bear out his tendency. Also, claimant's facial grimaces and attitude of being imposed upon by having to even explain his condition, particularly when definite answers were required, indicated to the observer that an element of voluntariness was included in his descriptions of the alleged severity of his impairment. It is this latter element that caused the Hearing Examiner to not fully credit the protestations concerning the absolutely incapacitating nature of the impairments as claimant most definitely insisted in his testimony. Thus, the Hearing Examiner's conclusion re motivation lies somewhere between the conclusions reached by Drs. Meyers and Angelucci, with leanings toward the latters' position." (Tr. 13–15).

The Hearing Examiner gave his Findings and Conclusions as follows:

"In summation and without intending to in any way modify or alter the findings hereinabove already made, the salient conclusions reached by the Hearing Examiner upon consideration of all the record evidence are hereinafter restated. It has been concluded and found that:

"The claimant continuously met the special earnings requirement of the Act throughout the entire effective period of his Application for Disability Insurance Benefits filed on September 28, 1964;

"As a result of his back injury resultant from the episode on March 5, 1964 in the coal mines, claimant sustained certain currently impairing symptoms as would preclude his engagement in strenuous manual labor such as coal mining;

"It is medically established that claimant's back condition is considered to be remediable by accepted methods of modern surgery;

"Hence, consideration has been given to the concept of remediability as expressed in Regulations Section 404.1502(g), but this element has not been found to be entirely dispositive of the result in this case;

"Consideration of the residual capacities for work still remaining within claim-

ant's potential has convinced the Hearing Examiner that even the combination of a back condition, a stomach condition, and illiteracy is not so severe as to preclude engagement in light, simple sedentary employment which is compatible with claimant's past experience in industrial machine-tending and which has been described in this record by the vocational expert witness;

"Accordingly it is the Hearing Examiner's finding that the record evidence does not establish that during the effective period of his Application for Disability Insurance Benefits filed on September 28, 1964, the claimant suffered from a combination of medically determined physical impairments of such a degree of severity as to prevent or preclude him from engaging in *any* substantial gainful activity.

### *"Decision*

"In accordance with the above-stated findings, it is the Hearing Examiner's decision that the record evidence demonstrates that the claimant, Troy Hall, is entitled neither to establish a period of disability nor to receive disability insurance benefits as sought by virtue of his said application therefor." (Tr. 15–16).

On May 20, 1965, the claimant filed his request for review of the Hearing Examiner's decision, and his request was granted by the Appeals Council.

On June 23, 1965, the Appeals Council rendered its decision, which, in part, is as follows:

"The medical report dated February 9, 1965, by Russell Meyers, M.D., contained the opinion that without surgery the claimant would be permanently unable to return to his usual work. However, the decision of the hearing examiner indicated that Dr. Meyers viewed the claimant as being restricted from all work activity. Except for this modification, the hearing examiner's statements as to the pertinent provisions of the Social Security Act, the issues in the case, and the evidentiary facts which were before him are incorporated herein by reference. No new evidence has been presented to

the Appeals Council for consideration in connection with the request for review.

"After a careful review of the case, including all the evidence, the applicable law and regulations, the hearing examiner's evaluation of the facts, and the reasoning in his decision, the Appeals Council adopts the inferences, findings, and conclusions of the hearing examiner.

"It is the decision of the Appeals Council that the claimant is not entitled to a period of disability or to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act, as amended, for which he filed application on September 28, 1964. The decision of the hearing Examiner is affirmed." (Tr. 2–3).

Thus, the decision of the Appeals Council became the final decision of the defendant, Secretary of Health, Education and Welfare.

Under the Social Security Act, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

■ The Secretary, and not the Court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony and to determine the case accordingly. Domanski v. Celebrezze, 323 F.2d 882, 8 A.L.R.3d 687, C.A. 6; Stumbo v. Gardner, 365 F.2d 275, 276, C.A. 6 (1966).

■ After considering the record as a whole, I am of the opinion that this Court is bound by the findings of the Hearing Examiner, as affirmed by the decision of the Appeals Council, and that both decisions are sustained by substantial evidence.

For the reasons indicated, the above mentioned final decision of the Appeals Council of June 23, 1965, adopting and affirming the decision of the Hearing Examiner of May 17, 1965, should be affirmed. An order will be entered in conformity herewith and directing that this action be dismissed.