James O. CRAFT

v.

Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare.

Civ. A. No. 76–0613.

United States District Court, W. D. Virginia, Abingdon Division.

May 19, 1977.

J. Marker Dern, Christiansburg, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

The plaintiff, James O. Craft, has petitioned this court to review the final decision of the Secretary of Health, education and Welfare denying his entitlement to Social Security disability benefits. Jurisdiction of this court is pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The only issue before this court is whether the Secretary's decision is supported by substantial evidence. If it is, the court must affirm. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

Mr. Craft is 56 years of age, and has a seventh-grade education. He has had no special vocational training. He has worked as a coal miner for 34 years, beginning in 1936, and ending in 1971. He performed general labor for the first 12 years in the mines—loading coal, running a "joy" and a cutting machine, and laying track. For the rest of his time in the mines, he was a sectional foreman.

The Administrative Law Judge, at the administrative hearing of this case, accurately summarized the medical evidence as follows:

A pulmonary function study conducted on May 3, 1971, reflected a normal maximum breathing capacity. Blood gas studies conducted on May 3, 1971, reflected a normal ventilatory capacity and normal maximum breathing capacity. Claimant's oxygen transfer was moderately impaired and his ventilatory response to exercise was very abnormal. Claimant is capable of performing light or sedentary work. His overall loss in functional capacity because of breathing difficulty is approximately 65%. (Exhibit 25).

An x-ray examination of the chest dated May 4, 1971, states that there are no changes in the lung field to suggest the presence of active disease. There is evidence of moderate emphysema and pneumoconiosis Category 2–3p, 1–2q. (Exhibit 26).

An x-ray taken on May 4, 1971, was interpreted as being completely negative for pneumoconiosis. (Exhibit 27).

An x-ray taken on May 4, 1971, was interpreted as revealing pneumoconiosis. (Exhibit 28).

A chest x-ray of October 9, 1971, was interpreted as showing residuals from a prior inflammatory disease of the lungs. An x-ray of the lumbar spine taken on October 9, 1971, was interpreted as showing extensive degenerative disc changes at L–5. (Exhibit 29).

Claimant was hospitalized from October 24, 1971, until November 3, 1971, with a diagnosis of cervical degenerative osteoarthritis. (Exhibit 31).

A pulmonary function study dated May 1, 1972, shows a total vital capacity of 4.35 liters and a maximum breathing capacity of 103 liters per minute. Total vital capacity is greater than the predicted normal and maximum breathing capacity was less than 20% lower than the predicted normal. (Exhibit 32).

A report of Dr. James L. Gardner dated June 6, 1972, states that claimant complained of pain in both legs and hips and his right hand and arm. No significant limitation of motion or instability of any extremity was detected. Claimant was found to have some generalized osteoarthritic changes and atritional rotator cuff tendonitis. Dr. Gardner felt that with weight reduction, use of a lumbosacral corset and medication, claimant could return to work. Psychophysiologic overlay was detected. (Exhibit 33).

A report of Dr. Jorge de la Piedra dated November 28, 1972, gives a diagnosis of contusions, sprain of the neck with osteoarthritis of the cervical spine, degenerated discs in the lower cervical spine, disketomy of the lumbar spine and chronic lumbosacral strain. Dr. Piedra states that claimant has a "permanent partial disability" of 25%. (Exhibit 34).

A report of Dr. James A. Thompson dated November 27, 1972, states that claimant complains of severe pain in his back and legs. He also complains of pain in his lower back, radiating into his right leg and heel. Dr. Thompson states that claimant is "totally and permanently disabled" because of osteoarthritis of the cervical and thoracic lumbar spine, sciatic rediculitis, severe dumping syndrome (subsequent to a subtotal gastrectomy performed in 1969) and pneumoconiosis. (Exhibit 35).

A letter from Dr. James A. Thompson dated May 8, 1973, states that claimant has severe pain in his back and legs and is unable to walk at a normal gait. Dr. Thompson states "I do not believe he is able to do any manual labor." (Exhibit 36).

A report of Dr. Thompson dated April 11, 1975, states that claimant has a severe limitation of motion of his neck and lower back and severe pain in his chest from osteothrombritis. Dr. Thompson states "I believe that he is truly disabled." (Exhibit 37).

Claimant was hospitalized in the Smythe County Community Hospital from September 30, 1975, until October 21, 1975, with a diagnosis of acute nephrolithiasis with urethral colic, silicosis with bilateral pulmonary fibrosis, osteoarthritis of the cervical spine, osteochondritis of the left ribs, bursitis of the left shoulder, and osteoarthritis of the left ribs, bursitis of

the left shoulder, and osteoarthritis. (Exhibit 38).

A report of Dr. Leslie Borbely, psychiatrist, dated January 19, 1976, gives a diagnosis of a moderately severe psychoneurotic depressive reaction. (Exhibit 52).

A report of Dr. James A. Thompson dated May 22, 1972, states that claimant is believed to be permanently and totally disabled. (Exhibit 53).

### TESTIMONY OF CLAIMANT'S PHYSICIAN

Dr. James A. Thompson testified at the hearing that he had treated the claimant since 1966 when he had back difficulty, a stomach disorder and trouble with his right arm and shoulder. By 1971 claimant was totally disabled but was pushing to keep working. Claimant had a personality disturbance in 1966, and his condition has deteriorated since. The physician's note dated May 22, 1972, (Exhibit 53) states that claimant is believed to be permanently and totally disabled. (Tr., at 14–16).

The opinion of the Administrative Law Judge, concluded that the claimant was not entitled to quarters of coverage for social security purposes from the earnings of the Anna Coal Company for the years 1967–71. Because of this, he determined that the special earnings requirements of the Social Security Act only entitled the claimant to insured status under the Act until June 30, 1972. The Administrative Law Judge determined that the claimant was not disabled on or before this date, and therefore, was not entitled to benefits under the Act. This finding concurred with the final decision of the disability examiner, who made the further finding that the claimant became disabled on November 11, 1972, after his insured status had expired. (Tr., at 200).

In making his determination as to the date that the claimant's insured status expired, the Administrative Law Judge found that:

Anna Coal Company was established in 1967 in the name of claimant's wife, Callie Craft. This was apparently done to avoid any difficulty with claimant's union affiliation. All of the business characteristics were in the name of the wife, including the business license and federal employer identification number, and none of these were changed when claimant claimed sole self-employment income in 1969, 1970, and joint income with the wife in 1971. The same business arrangement was attempted to reflect three different earnings patterns. On August 9, 1973, . . . the claimant's statement concluded that the self-employment income of Anna Coal Company belonged to his wife. (Tr., at 16).

■ 42 U.S.C. § 410(a)(3)(A) defines "employment", for the purposes of Subchapter II, as excluding "Service performed by an individual in the employ of his spouse . . . ." Whether or not a qualifying employer-employee relationship exists between relatives is a question of fact on which the Secretary's finding is conclusive if supported by substantial evidence. *Domanski v. Celebrezze*, 323 F.2d 882 (6th Cir. 1963), *cert. den.*, 376 U.S. 958, 84 S.Ct. 980, 11 L.Ed.2d 976 (1964). Incorporating the business so that the relative works for a corporation does not necessarily establish that the corporation, and not a relative controlling the corporation, is the real employer. The Secretary and the courts may pierce the corporate veil where the facts reveal that the employee and the real owner of the business were related. *Howatt v. Folsom*, 253 F.2d 680 (3d. Cir. 1958). It is obvious that this body of law was relied upon by the Law Judge in making his determination that the claimant's earnings from 1967–71 did not qualify as quarters of coverage which would extend the period of his insured status to a later date.

■ The court is of the opinion that the Administrative Law Judge was correct in piercing the corporate veil in order to determine the true status of the parties involved. However, the court feels that his analysis of their status was superficial, and therefore, erroneous. The court does not believe that this is a case, such as *Howatt*, where incorporation was used to defraud the Social

Security Administration into thinking that an employer-employee relationship existed, where it did not. The corporate structure in this case was a sham, but as noted in the opinion of the Administrative Law Judge, it was erected in order to avoid any difficulty with the claimant's union affiliation. (Tr., at 16). The court is of the opinion that when the corporate veil is pierced, the relationship which is revealed is not that of one spouse employed by another, which is the situation to which 42 U.S.C. § 410(a)(3)(A) is applicable. The more realistic and equitable interpretation of the instant circumstances would find that the claimant was in fact self-employed for this entire period (Tr., at 65–6), a condition which would entitle him to further quarters of coverage under the Act. That the claimant was self-employed, in effect, is borne out by his income tax returns, which he filed jointly with his wife, and which indicate that he received the full and direct benefit of this income, (Tr., at 69), even though he wasn't the "official" owner of the mine. Further, the claimant received no wages from the company even though he did all of the day-to-day work of running the mines. It is true that all of the bills and licenses were in the name of Mrs. Craft, but in actuality, she didn't even sign the checks of the company. (Tr., at 89, and 98). Further, the accountant of the mine stated that Mr. Craft was actually self-employed and began to declare himself so employed in January, 1969. (Tr. 177–8). The court feels that this was reflective of Mr. Craft's actual status all along, and certainly should be determinative of his status after he started paying self-employment tax on himself in January, 1969.[1]

These additional self-employment earnings extend Mr. Craft's insured coverage to September 30, 1973. The disability examiner's report found that the claimant was disabled within the meaning of the Act as of November 20, 1972. (Tr., at 200). Therefore, when his quarters of coverage are refigured, he is still insured under the Act on the date he was found to be disabled, and is entitled to benefits under the Act as of that date.

Upon the finding of this court that the final decision of the Secretary is in error, and therefore not supported by substantial evidence, that decision is hereby reversed and the case remanded for the determination of benefits.

---

1. It is worthy of note that Anna Coal Company closed down right after Mr. Craft's injury in 1971. (Tr., at 69).